[804 NE2d 402, 772 NYS2d 238]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT JOHNSON, Appellant.

Argued November 20, 2003; decided December 22, 2003

## POINTS OF COUNSEL

*Legal Aid Society Criminal Appeals Bureau,* New York City (*Laura Lieberman Cohen, Andrew C. Fine* and *Laura R. Johnson* of counsel), for appellant. The nontestifying complainant's hearsay statement at the hospital was improperly admitted as an excited utterance, thereby violating appellant's right to confront the witnesses against him, because the statement was made one hour and 20 minutes after the incident, after the complainant was treated and found to be calm, alert, and able to follow complex commands; the statement was a paragraph-long narrative made in response to police questioning, and the remaining evidence was legally insufficient to prove appellant's guilt beyond a reasonable doubt. The court's erroneous admission of the hearsay statement as an excited utterance deprived appellant of his due process right to a fair trial and to confront the witnesses against him. (*People v Brown,* 70 NY2d 513; *People v Marks,* 6 NY2d 67; *People v Nieves,* 67 NY2d 125; *People v Vasquez,* 88 NY2d 561; *People v Edwards,* 47 NY2d 493; *People v Sostre,* 51 NY2d 958; *People v Caviness,* 38 NY2d 227; *People v Norton,* 79 NY2d 808; *People v Fratello,* 92 NY2d 565; *Lilly v Virginia,* 527 US 116.)

*Robert M. Morgenthau, District Attorney,* New York City (*Walter J. Storey* and *Susan Axelrod* of counsel), for respondent. The trial court properly admitted Val Grey's hospital statement as an excited utterance. (*People v Brown,* 70 NY2d 513; *People v Tonge,* 93 NY2d 838; *People v West,* 56 NY2d 662; *People v Robinson,* 36 NY2d 224; *People v Edwards,* 47 NY2d 493; *People v Marks,* 6 NY2d 67; *People v Cotto,* 92 NY2d 68; *People v Nieves,* 67 NY2d 125; *People v Brooks,* 71 NY2d 877; *People v Vasquez,* 88 NY2d 561.)

## OPINION OF THE COURT

Chief Judge KAYE.

Defendant appeals his convictions of assault in the first degree and resisting arrest, asserting that an out-of-court, hearsay

statement made by the victim of the assault was improperly admitted at trial as an excited utterance. The Appellate Division affirmed. Because we conclude that the trial court's error was harmless beyond a reasonable doubt, we also affirm.

On February 5, 2000, Police Officer Jerrold Lutz and his partner came to the aid of Val Grey, a homeless man who had been stabbed twice in the eye. When the police arrived on the scene, defendant, also homeless, was holding in his right hand an ice pick with traces of blood on it while struggling with the victim, who had pinned defendant's right arm against a wall. Upon seeing the police, the victim screamed, "[H]e stabbed me, he stabbed me." The police arrested defendant[1] and Grey staggered to a nearby laundromat, where he wiped the blood from his eye with a wet paper towel. One to two minutes later, Lutz entered the laundromat and the victim asked the officer whether "his eye was still intact." Grey, accompanied by Lutz, was then taken to Bellevue Hospital by ambulance. Throughout the ride, as emergency medical technicians began to treat him, Grey continued to state that he had been stabbed, and continued to express concern that he had lost his eye, asking repeatedly whether it was still there.

Grey was given further treatment upon his arrival at the hospital. Finally, approximately one hour after the stabbing, he was interviewed by Lutz and made, in substance, the following statement to the officer about the circumstances leading up to the stabbing:

> "[H]e was traveling down the stairway, at the subway station, and he saw a steel garbage can come rolling down the stairs next to him. He informed me that he was under the impression that that garbage can was intended to hit him. He then went back up the stairs to confront whoever threw the garbage can down the stairs. He did not see who threw it. [He stated he was informed by passersby that Mr. Johnson had thrown the can done (*sic*) the stairs.][2] Mr. Johnson was standing approximately fifteen or so yards away. Approximately. Mr. Grey then went and confronted Mr. Johnson. A struggle ensued. Which resulted in Mr. Grey being stabbed."

---

1. Defendant resisted arrest and punched Lutz's partner in the face. He was subdued only after being wrestled to the ground by the police. Defendant suffered no injury.

2. The double hearsay contained in the bracketed portion of the statement was not admitted before the jury.

Later that night, the victim's cognitive function began to deteriorate, resulting in the need for emergency brain surgery. After several months of treatment in Bellevue's rehabilitation program, Grey left the hospital without being discharged. Despite a diligent search by the police and prosecution, Grey could not be located for trial and the People sought to introduce his hearsay statements as excited utterances. On this appeal, defendant does not challenge Grey's statements at the scene, in the laundromat or in the ambulance, but claims that the final statement to the officer, quoted above, should not have been received in evidence.

The trial court held a hearing on the People's motion to introduce the statements at trial, at which Lutz testified. According to the testimony adduced at the hearing, when the police first approached defendant and the victim, who were then struggling with each other, the victim was bleeding heavily from his eye. The victim was "very agitated, very excited, he was confused about what was happening." Specifically, "[h]is speech was very high pitched, he was screaming at times. He was very unsteady in his movement." Similarly, when the officer entered the laundromat approximately one to two minutes later, the victim's demeanor had not changed in any way. Still distraught, the victim stated that he thought he had lost his eye and he asked the officer whether his eye had been "cut out." The victim "continued to be very agitated" and kept asking the officer how this happened. The victim "was having a little bit of difficulty hearing" the officer. "He was distracted by the amount of pain he was in. He was moaning." He was also "giving a lot of attention to his left eye. He was very distracted by what was happening to it."

By the time the officer spoke with the victim in the hospital, however, Grey's demeanor had become more relaxed in that "[h]e wasn't moving, he wasn't fidgeting, he was lying still." Moreover, Grey's hospital records, also introduced into evidence at the hearing, reflected that at the time of his admission he was awake, alert and oriented; he was able to follow complex instructions; and his speech was fluent.

## Discussion

The familiar common-law hearsay exception for excited utterances, formerly called spontaneous declarations, has been recognized by this Court for nearly a century (*see People v Del Vermo*, 192 NY 470, 483-487 [1908]). The principle is easily

stated. An out-of-court statement is properly admissible under the excited utterance exception when made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication. "Underlying this exception is the assumption that a person under the influence of the excitement precipitated by an external startling event will lack the reflective capacity essential for fabrication and, accordingly, any utterance he makes will be spontaneous and trustworthy" (*People v Edwards*, 47 NY2d 493, 497 [1979]). Accordingly, "under certain circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control. . . . [An excited] utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection" (*People v Marks*, 6 NY2d 67, 71 [1959], quoting 6 Wigmore, Evidence § 1747 [I] [3d ed]).

Stating the rule is simple. Determining a declarant's mental state—that is, whether at the time the utterance was made a declarant was in fact under the stress of excitement caused by an external event sufficient to still his or her reflective faculties—is considerably more difficult.[3]

Among the factors to be considered by a trial court is the period of time between the startling event and the out-of-court statement. As we have several times noted, there can be no definite or fixed period of time within which the declaration must have been made, and each case must depend upon its own circumstances. "The test is whether the utterance was made before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance" (*People v Brown*, 70 NY2d 513, 518 [1987] [internal quotation marks omitted]). Ultimately, "the time for reflection is not measured in minutes or seconds, but rather is measured by facts" (*People v Vasquez*, 88 NY2d 561, 579 [1996] [internal quotation marks omitted]). Nor does the fact that statements are made in response to po-

---

3. Regrettably, there is no simple, sure-fire test such as that once proposed by the late Irving Younger: "How do you recognize an excited utterance? I can tell you. If hearsay is offered and it begins with 'My God,' and ends with an exclamation point, it is an excited utterance" (Younger, An Irreverent Introduction to Hearsay, at 33 [ABA Section of Litig Monograph Series No. 3, 1977]). Neither exclamation nor punctuation can be determinative. Rather, courts must take into account that a variety of circumstances may determine whether a declarant remains under the stress of a startling event.

lice questioning, "standing alone—any more than do other specific circumstances—defeat the admissibility of the responses as excited utterances" (*Brown*, 70 NY2d at 522).

While any serious injury may be a significant factor in determining whether the declarant remains under the stress of a startling event, it is not the only factor (*see* Steven Zeidman, *Who Needs an Evidence Code?: The New York Court of Appeals's Radical Re-Evaluation of Hearsay*, 21 Cardozo L Rev 211, 220-221 [1999]). There is, in short, no "injury" exception to the hearsay rule. Indeed, we have never held that any statement made by an injured victim about the event leading to the injury, however long after the trauma, constitutes an excited utterance merely because the victim continues to suffer pain caused by the injury. Even in the case of serious injury, the test remains what it has always been: whether the declarant is capable of studied reflection and therefore capable of fabrication.

On the combined facts before us, we cannot say that the declarant's capacity for reflection and deliberation remained stilled by the time of his final statement to the police. The challenged declaration was made—in narrative form and in response to prompting—a full hour after the startling event (*cf. People v Cotto*, 92 NY2d 68, 79 n 3 [1998] [statement made in ambulance less than 10 minutes after declarant was shot admissible as excited utterance]; *Edwards*, 47 NY2d at 498 [statement made in response to a "simple inquiry"]). Moreover, the declarant had become more relaxed. According to his uncontroverted medical records, he was awake, alert and oriented; he was able to follow complex instructions; and his speech was fluent. In this condition, despite pain, clearly declarant was no longer without the ability to engage in reasoned reflection upon the content of his statement. Indeed, when asked by the prosecutor whether there had been "any pauses or a long time to reflect" when the victim explained his version of events to the officer at the hospital, Lutz responded, "There were moments of reflection."

Given the victim's disappearance, this case had to proceed to trial in the absence of a live complaining witness subject to cross-examination.[4] Where the only direct evidence of a defendant's guilt is in the form of hearsay testimony, courts must be especially vigilant to ensure that only evidence that

---

4. Six other witnesses did testify at trial: two police officers, the treating neurosurgeon, the victim's physical therapist, and an assistant district attorney and her trial preparation assistant.

rises to the level of "inherent reliability" (*Edwards*, 47 NY2d at 499) underlying such firmly rooted hearsay exceptions as excited utterances is admitted at trial (*see* 6 Frumer and Biskind, Bender's New York Evidence—CPLR § 24.03 [1], at 24-8 [2003] [factors in determining whether a declaration constitutes an excited utterance include "the fact that the complainant was subject to cross-examination"]).

Nevertheless, we conclude that the error here was harmless beyond a reasonable doubt.[5] Even without the victim's final statement, eyewitness police testimony established that defendant was holding a blood-stained ice pick while struggling with the victim, who was bleeding heavily from his eye. The victim's immediate cries—"[h]e stabbed me, he stabbed me"—properly admitted as excited utterances and not challenged on this appeal, proved the identity of defendant as the perpetrator of the crime. Moreover, Grey had been stabbed twice, negating any possibility of accident. Finally, inasmuch as defendant did not argue self-defense at trial, the People had no burden to disprove that defense beyond a reasonable doubt (*see* Penal Law § 25.00 [1]). Indeed, during the charge conference, the court—"just to make one thing a hundred percent clear"—stated for the record that there had been no evidence of justification. Defense counsel responded, "That is correct." In short, the evidence of defendant's guilt was overwhelming.

Finally, we have no disagreement with the bulk of the dissent: The right of confrontation is indeed a fundamental right; face-to-face cross-examination of witnesses is greatly to be preferred; and the hospital statement here—unlike the earlier statements—was erroneously admitted. We disagree only as to harmless error on these indisputable facts: Defendant stabbed the victim in the eye with an ice pick; as the medical evidence established, the victim was stabbed twice, negating any possible accident; defense counsel made it "a hundred percent clear" at trial that he was not arguing self-defense, or justification; and, although six other witnesses testified and were subject to cross-examination, the victim had vanished months earlier and could

---

5. Since the right to confront witnesses (*see* US Const Amend VI; NY Const, art I, § 6) may be implicated when a hearsay statement is introduced at trial, we apply a constitutional standard of harmless error (*see People v Crimmins*, 36 NY2d 230, 237 [1975]; *Chapman v California*, 386 US 18 [1967]). But we cannot agree with the dissent that a per se violation of the Confrontation Clause is dispositively established whenever a declarant fails to testify at trial and therefore is not subject to cross-examination.

not be located. On these facts, the conviction should be sustained.

Accordingly, the order of the Appellate Division should be affirmed.

G.B. SMITH, J. (dissenting). Defendant's argument on this appeal is that a statement by the complainant in a hospital in answer to police questioning was not an excited utterance and violated his federal and state rights to confront witnesses and to due process. Because defendant's conviction violated his federal and state constitutional rights to confront witnesses and to due process, I dissent.

Defendant was convicted of assault in the first degree and resisting arrest resulting from the stabbing of the complainant in the eye with an ice pick. The complainant did not testify before the grand jury or at the trial. The evidence was that two police officers came upon the defendant and the complainant while they were struggling with each other and defendant was holding the ice pick. Both men were homeless, the complainant smelled of alcohol and defendant appeared to be slightly intoxicated.

The only evidence of how the struggle between defendant and the complainant occurred resulted from statements of the complainant which were all admitted by the trial court as excited utterances. The first statement, made as the police approached the two men, was, "He stabbed me." The second statement, made after the police had subdued defendant and after the complainant had wandered into a nearby laundromat, was that he had lost his eye and a question as to whether or not his eye was still there. In the third statement in the ambulance on the way to the hospital, complainant again said he was stabbed and continued to question whether he would lose his eye. The fourth statement, made at the hospital in response to police questioning about an hour after the incident, without quoting, was substantially as follows: Complainant stated that while he was in a subway station, a garbage can was thrown down the stairs. Complainant felt that the can was thrown at him. He ran up the stairs and someone told him that defendant had thrown the can. He confronted the defendant and during the struggle he was stabbed in his eye. He could not say how the stabbing occurred.

The trial court admitted all of the statements as excited utterances and defendant was convicted. The Appellate Division

affirmed, stating, "The evidence clearly established that all of the victim's statements were made while he was still under the influence of the stress caused by his serious injuries (*see People v Brown*, 70 NY2d 513; *People v Edwards*, 47 NY2d 493)." (299 AD2d 213, 214 [2002].) A Judge of this Court granted defendant leave to appeal.

At the time of the trial, defendant argued that his right to confront witnesses[1] and to a fair trial would be violated by the admission of all of the statements as excited utterances. On this appeal, he argues only that the statement made to the police in the hospital should not have been admitted and that its admission denied him the constitutional rights to confront witnesses and to a fair trial.

Analysis of this case must begin with *Pointer v Texas* (380 US 400 [1965]). There, the Supreme Court of the United States, after noting that the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination had been made obligatory on the states by the Fourteenth Amendment stated, "We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment" (380 US at 403). The Court went on to state the following with respect to cross-examination:

> "It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case" (*id.* at 404).

In *Pointer*, the Supreme Court reversed petitioner's conviction for robbery because the testimony of the complainant at a preliminary hearing had been used at the trial held after the complainant had moved to California and did not intend to return to Texas. The petitioner did not have an attorney at the preliminary hearing and was denied the right to cross-examine the complainant.

---

1. Both the Sixth Amendment to the United States Constitution and article I, § 6 of the New York State Constitution give a defendant the right to confront witnesses against him or her. The Fourteenth Amendment to the Constitution and article I, § 6 of the New York State Constitution assure the right to due process and a fair trial.

The right to confront witnesses, in essence, the right to cross-examine them, is a sacred right enshrined not only in the Sixth Amendment of the United States Constitution and article I, § 6 of the New York State Constitution but is ancient and is mentioned in a number of works that predate the Constitution, such as the Bible, and Shakespeare's Henry VIII (*see Lilly v Virginia,* 527 US 116, 140, 141 [1999] [Breyer, J., concurring]). The right of confrontation permits the accused to face his accusers—to test their credibility, their trustworthiness and their veracity. Cross-examination is important because it is instrumental in "exposing falsehood and bringing out the truth in the trial of a criminal case" (*Pointer v Texas,* 380 US at 404). A Confrontation Clause violation may also constitute a violation of the right of due process and fair trial guaranteed by the Fourteenth Amendment and article I, § 6 of the New York State Constitution.

"The right to cross-examination, protected by the Confrontation Clause, . . . is essentially a 'functional' right designed to promote reliability in the truth-finding functions of a criminal trial. The cases that have arisen under the Confrontation Clause reflect the application of this functional right" (*Kentucky v Stincer,* 482 US 730, 737 [1987]). According to *Kentucky v Stincer,* those cases reflect two broad and nonexclusive categories—first, that the Confrontation Clause is violated when hearsay evidence is admitted as substantive evidence against a defendant without an opportunity to question the declarant at trial and, second, when an out-of-court statement is admitted at trial without adequate indications of trustworthiness (*id.*).

In dealing with the relationship between the Confrontation Clause and hearsay evidence, the Supreme Court has stated, "The historical evidence leaves little doubt, however, that the Clause was intended to exclude some hearsay" (*Ohio v Roberts,* 448 US 56, 63 [1980], citing *California v Green,* 399 US 149, 156-157 nn 9, 10 [1970]). The Court in *Ohio v Roberts* went on to explain that the Confrontation Clause contained a preference for face-to-face cross-examination of witnesses (*id.*). Nevertheless, hearsay evidence was admissible but was restricted in two ways. First, the Sixth Amendment established a rule of necessity where usually the prosecution had to produce the declarant or demonstrate his or her unavailability (448 US at 65). Second, once the witness was shown to be unavailable, the hearsay statement was admissible only if its trustworthiness was such that it did not depart from the rule of face-to-face confrontation (*id.*).

*Ohio v Roberts* concluded that hearsay evidence could be admitted only if it bears "adequate 'indicia of reliability' " (448 US at 66). "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness" (*id.*). In *Ohio v Roberts* the Court held that the testimony of a witness at a preliminary hearing, where the witness had been subject to cross-examination, could be admitted into evidence at trial where that witness had failed to honor several subpoenas to appear.

In *Idaho v Wright* (497 US 805, 820 [1990]) the Supreme Court referred to excited utterances, dying declarations and statements made for medical treatment as firmly rooted hearsay exceptions which would normally be admitted without other indicia of reliability. But the Court went on to add that such statements had to be so trustworthy that little could be added by cross-examination (497 US at 821). There, the Court held that statements concerning sexual abuse made to a doctor by a three-year-old girl did not bear a sufficient indication of reliability and were improperly admitted into evidence.[2]

In this case, the defendant's rights under the Confrontation Clause as articulated in *Kentucky v Stincer* were violated by the hearsay evidence admitted as substantive evidence without an opportunity for cross-examination and the admission of hearsay evidence without sufficient indications of trustworthiness. Defendant was convicted on the basis of a hospital statement that the majority agrees was inadmissible. Contrary to the decision of the majority, I cannot conclude that the error was harmless beyond a reasonable doubt and that the introduction of the hospital statement did not contribute to the conviction (*Chapman v California*, 386 US 18 [1967]).

---

2. In *White v Illinois* (502 US 346 [1992]), the Supreme Court upheld the conviction of a defendant for aggravated criminal sexual assault, residential burglary and unlawful restraint based upon the spontaneous declarations and statements given for medical treatment of the four-year-old victim. The four-year-old victim had experienced emotional difficulty upon being brought to the courtroom on two occasions. The trial court was not asked to and did not make a finding that the child was unavailable to testify. The defendant did not attempt to call the witness to testify. In ruling that the child's statements could be introduced, the Court held that the Confrontation Clause had not been violated. Thus, it is evident that in some cases an excited utterance can be admitted without violating the right to confront witnesses. It is also clear that the statements were made by a four-year-old girl and that there was other evidence of sexual misconduct against her.

In *Chapman* the Supreme Court concluded that there are some constitutional errors which may be considered harmless:

"We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction" (*id.* at 22).

That a constitutional error can be harmless is not the only relevance of the *Chapman* case. As important is the Supreme Court's determination of when an error is harmless. The Court stated:

"We prefer the approach of this Court in deciding what was harmless error in our recent case of *Fahy* v. *Connecticut*, 375 U. S. 85. There we said: 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' *Id.*, at 86-87. . . . There is little, if any, difference between our statement in *Fahy* v. *Connecticut* about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" (386 US at 23-24).

There are situations in which the fundamental interests served by the right to confront witnesses are not significantly impaired by the admission of a hearsay statement that falls under an exception (*cf. Lilly v Virginia*). In this case, however, the challenged statement does not even fall within a hearsay exception. The introduction of that statement violated defendant's right of cross-examination and was prejudicial in that it gave only the complainant's version of the events without cross-examination. Moreover, the complainant could not say how the stabbing occurred. Defendant had no burden at the trial and was presumed innocent.

The statements made at the scene, in the laundromat and in the ambulance, even assuming their admission was normally proper under *Ohio v Roberts* and *Idaho v Wright*, did not bear a sufficient indication of reliability. The complainant had a motive to lie because he went looking for the person who had thrown a trash can and sought a confrontation. Moreover, the fact that

the complainant smelled of alcohol is an indication that he may have been under the influence of alcohol and "militates against finding that his statements were so inherently reliable that cross-examination would have been superfluous" (*Lilly v Virginia*, 527 US 116, 139 [1999]).

The evidence leaves little doubt that defendant stabbed the victim. The same cannot be said of the evidence that defendant did so intentionally. How the confrontation proceeded and how the stabbing occurred, whether deliberately or accidently during a struggle, are unknown. Had the complainant been subject to cross-examination, questions surrounding the incident would have been answered and the jury might have gotten a more complete picture of the confrontation.

I would reverse the conviction.

Judges CIPARICK, ROSENBLATT, GRAFFEO and READ concur with Chief Judge KAYE; Judge G.B. SMITH dissents and votes to reverse in a separate opinion.

Order affirmed.