■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCIS AULETA, Appellant. [919 NYS2d 222]—

Mercure, J.P.

In July 1997, the 17-year-old victim reported to police that she had been raped at gunpoint by defendant in the basement of his restaurant in the City of Albany. The victim stated that she went to the restaurant for a job interview. While there, defendant held a gun to her neck, bound her hands and neck with apron straps or rope, and forced her to engage in oral sodomy and sexual intercourse. The victim claimed that although defendant initially threatened to kill her, he ultimately let her leave after she promised both that she would not report the rape and that she would meet defendant later that evening.

Police later responded to the restaurant and defendant, who was then driving in his car, called 911 on his cell phone, and allegedly indicated that he had a gun and that he intended to either kill himself or turn himself in to the Albany police. Several Albany police officers in separate, marked vehicles pursued defendant in his car, ultimately apprehending him by force and recovering a loaded gun from the front seat of his car. Once in custody, defendant waived his rights and signed a statement confessing that he forced the victim to have sex with him at gunpoint. A search of defendant's restaurant revealed, among other things, rope and apron strings in the basement and a foam mattress in a dumpster.

Thereafter, defendant was charged in an indictment with rape in the first degree, sodomy in the first degree, criminal possession of a weapon in the second degree and two counts of criminal use of a firearm in the first degree. Following an initial mistrial, a jury convicted defendant as charged. County Court (Rosen, J.) denied defendant's motion to set aside the verdict, and sentenced him to 3 to 6 years on the criminal possession of a weapon conviction to run consecutively to concurrent terms of 12½ to 25 years on the remaining counts. With the People's consent, defendant's motion pursuant to CPL 440.20 was granted, and his sentence was amended to provide that all terms would run concurrently. The court (Herrick, J.) thereafter denied defendant's additional motions pursuant to CPL 440.10 and 440.20. Defendant now appeals from the judgment of conviction and, by permission, from the orders denying his CPL 440.10 and 440.20 motions. We affirm.

Initially, we reject defendant's argument that County Court (Rosen, J.) erred in admitting, as "excited utterances," statements made by the victim to two friends shortly after escaping from defendant's restaurant. "An out-of-court statement is properly admissible under the excited utterance exception when

made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication" (*People v Johnson*, 1 NY3d 302, 306 [2003]; *see People v Vasquez*, 88 NY2d 561, 579 [1996]). In determining whether the statement was made prior to an opportunity to reflect or fabricate, "[t]he court must assess 'not only the nature of the startling event and the amount of time which has elapsed between the occurrence and the statement, but also the activities of the declarant in the interim' " (*People v Vasquez*, 88 NY2d at 579, quoting *People v Edwards*, 47 NY2d 493, 497 [1979]; *see People v Brown*, 70 NY2d 513, 518-519 [1987]). Here, as defendant asserts, the victim testified that she was able to form and execute an escape plan and, after escaping, drive 10 to 15 minutes in traffic to the home of Deborah Weisburgh and Joseph House, where she reported the rape. Nevertheless, Weisburgh and House testified that upon her arrival, the victim was hysterical, crying and shaking, could not walk up the stairs without stumbling, and collapsed in a fetal position on a bed. In response to Weisburgh's questions, the victim told her that a man had held a gun to her head and raped her on a job interview. House then called the police. Under these circumstances, we cannot say that County Court abused its discretion in determining that the victim's statements to Weisburgh and House were made under the continuing stress of the ordeal and, thus, admissible as excited utterances (*see People v Johnson*, 277 AD2d 702, 704-705 [2000], *lv denied* 96 NY2d 831 [2001]; *People v McClain*, 250 AD2d 871, 873 [1998], *lv denied* 92 NY2d 901 [1998]; *cf. People v Johnson*, 1 NY3d at 307).

Defendant's further contention that he received ineffective assistance of counsel lacks merit. Defendant faults trial counsel for failing to retain or call a medical expert to testify. In that regard, he provides an affidavit from a gynecologist stating that, based upon the victim's medical records, "it is not possible to state whether any sexual conduct in this case was or was not consensual." While an isolated error by otherwise competent counsel may, in rare circumstances, operate to deprive a defendant of meaningful representation (*see People v Turner*, 5 NY3d 476, 480-481 [2005]), "[i]t is well settled that the failure to call a particular witness does not necessarily amount to ineffective assistance of counsel" (*People v Muller*, 57 AD3d 1113, 1114 [2008], *lv denied* 12 NY3d 761 [2009]; *see People v Hobot*, 84 NY2d 1021, 1023-1024 [1995]; *People v McCrone*, 12 AD3d 848, 850 [2004], *lv denied* 4 NY3d 800 [2005]). The People's medical expert testified at trial that there was no evidence of physical trauma or injury, a fact that defense counsel highlighted on cross-examination. Inasmuch as the affidavit now proffered by

defendant does not contradict this testimony—or any other given at trial—defendant has failed to demonstrate that trial counsel's failure to call a medical expert denied him a fair trial (*see People v Hobot*, 84 NY2d at 1024; *People v Muller*, 57 AD3d at 1114-1115).

Similarly unavailing is defendant's argument that evidence recovered by police from his restaurant should have been suppressed because the search of the restaurant was illegal. Defendant does not dispute that a valid search warrant was issued at 1:30 A.M. on the morning after the incident; rather, he argues that police conducted an illegal search of his restaurant a few hours before the warrant was obtained. We note, however, that defendant offers nothing to demonstrate that such a premature search occurred. His girlfriend's testimony in that regard was rejected at the suppression hearing as lacking credibility, and defendant's surmise based upon the absence of entries on computer assisted dispatch records for one officer and a few fleeting, inconclusive remarks on a radio dispatch tape is insufficient. In any event, even assuming that the search occurred shortly before the issuance of the warrant, any evidence recovered from the restaurant was admissible pursuant to the "inevitable discovery" doctrine (*see People v Turriago*, 90 NY2d 77, 85-87 [1997]; *People v Oldacre*, 53 AD3d 675, 677 [2008]).

Next, defendant asserts that the People committed numerous *Brady* and *Rosario* violations by withholding evidence that could have been used to impeach the credibility of most of the People's witnesses. Defendant is correct that "[a] prosecutor's duty of disclosing exculpatory material extends to disclosure of evidence impeaching the credibility of a prosecution witness whose testimony may be determinative of guilt or innocence" (*People v Baxley*, 84 NY2d 208, 213 [1994]; *see People v Monroe*, 17 AD3d 863, 864 [2005]). Nonetheless, a defendant seeking to establish a *Brady* violation must show that "prejudice arose because the suppressed evidence was material" (*People v Fuentes*, 12 NY3d 259, 263 [2009]). Defendant concedes that, given the procedural posture of this case, materiality must "be demonstrated by a showing that there is a 'reasonable probability' that [the evidence] would have changed the outcome of the proceedings" (*id.*). To establish a *Rosario* violation, a defendant must show that the People failed "to disclose [a] recorded statement in [their] possession or control made by a person [they] intend[ed] to call to the stand, which relate[d] to the subject matter of the witness' testimony" (*People v Williams*, 50 AD3d 1177, 1178-1179 [2008] [internal quotation marks and citation omitted]). A *Rosario* violation will lead to reversal only if there is a "reason-

able possibility" that nondisclosure contributed to the verdict (*id.* at 1179 [internal quotation marks omitted]; *see People v Tucker*, 40 AD3d 1213, 1215 [2007], *lv denied* 9 NY3d 852 [2007]).

Here, the probative value of the majority of the evidence referred to by defendant—a photograph of an officer in defendant's restaurant that is not time-stamped, a computer-assisted dispatch record, police interdepartmental correspondence that shows minor inconsistencies regarding the timing of one officer's arrival at the scene of defendant's arrest, jail records, and a 911 audiotape that was consistent with the testimony offered at trial—is entirely speculative and there is no reasonable probability that such evidence would have impacted the jury's verdict (*see People v Thomas*, 38 AD3d 1134, 1137 [2007], *lv denied* 9 NY3d 852 [2007]; *People v Crandall*, 38 AD3d 996, 997 [2007], *lv denied* 9 NY3d 842 [2007]). Furthermore, while the People admit that the failure to turn over the interdepartmental correspondence of Officer William Warner constituted a *Rosario* violation inasmuch as Warner testified at trial, there is no reasonable possibility that disclosure of that document would have led to a different verdict. Although the document is inconsistent in minor respects with Warner's direct testimony regarding the chain of events leading up to defendant's arrest after police pursued his vehicle, the limited utility of the document as impeachment evidence is immaterial given the overwhelming physical evidence corroborating the victim's version of events (*see People v Crandall*, 38 AD3d at 997; *see also People v Fuentes*, 12 NY3d at 264-265).

Finally, while we agree with defendant that County Court (Herrick, J.) erred in denying his CPL 440.10 motion on the ground that he failed to raise the issues presented in his prior CPL 440.20 motion (*see* CPL 440.10 [3] [c]), the court went on to properly deny the motion on the merits. Contrary to defendant's argument, the court was not required to summarily grant his CPL 440.10 and 440.20 motions—or hold hearings on the motions—simply because the People did not controvert every allegation made by defendant (*see* CPL 440.30 [1]; *People v Hoffler*, 74 AD3d 1632, 1635 n 4 [2010]; *People v Vasquez*, 287 AD2d 334, 334-335 [2001], *lv denied* 97 NY2d 709 [2002]). Defendant's remaining claims have been considered and found to be lacking in merit.

Spain, Rose, Lahtinen and Garry, JJ., concur. Ordered that the judgment and orders are affirmed.