People v McCauley (2018 NY Slip Op 04598)





People v Mccauley


2018 NY Slip Op 04598


Decided on June 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 21, 2018

107753

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ANDRE McCAULEY, Appellant.

Calendar Date: May 3, 2018

Before: McCarthy, J.P., Devine, Clark, Aarons and Pritzker, JJ.


Paul J. Connolly, Delmar, for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.


McCarthy, J.P.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered June 5, 2015 in Albany County, upon a verdict convicting defendant of the crime of attempted assault in the first degree.
Defendant was in an altercation with the victim, during which, it is alleged, defendant shot at the victim and a bullet grazed his head. As a result of this incident, defendant was charged in an indictment with attempted murder in the second degree and attempted assault in the first degree. Following a trial, the jury found defendant guilty of attempted assault in the first degree. Supreme Court sentenced defendant to 12 years in prison, followed by five years of postrelease supervision. Defendant appeals.
The verdict is not against the weight of the evidence. Where an acquittal would not have been unreasonable, this Court must view the evidence in a neutral light, give deference to the jury's credibility determinations and "weigh the relative probative force of conflicting testimony and the relative strength of the conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; see People v Johnson, 91 AD3d 1194, 1196 [2012], lv denied 18 NY3d 995 [2012]). In his videotaped interrogation, defendant admitted that he had gone to the victim's garage to fight, was present there with the victim and the victim's friend and engaged in an altercation with the victim. Defendant denied having or shooting a gun, and asserted that he injured the victim with an ice-pick type tool that the victim first brandished. The indictment specifically alleged that defendant shot the victim with a gun. Defendant now argues that the People failed to prove [*2]that the victim was shot, which is required to establish the element of attempting to cause serious physical injury "by means of a deadly weapon," as alleged (Penal Law § 120.10).
From the garage where the incident occurred, police recovered a shell casing that had been fired. In a 911 call, the victim's friend stated that there was a guy with a gun, who he described as a black male with an orange sweater. Defendant admitted that he was wearing an orange hooded sweatshirt when he went to the garage. The victim's friend also stated on the 911 call that the man was inside, the man had just been right in front of him with a gun, and an ambulance was needed because the man "possibly shot my friend." Blood on defendant's sneakers was a match to the victim's DNA.
An emergency room doctor, who had previously treated approximately three dozen gunshot wounds, testified that he treated the victim on the date of the incident. Although the doctor testified that the wound on the side of the victim's head appeared consistent with a gunshot wound, on cross-examination he acknowledged that it was possibly due to trauma suffered during a physical altercation. However, he explained that the injury appeared consistent with a bullet graze due to the particularly crisp edges and shallow linear laceration, and because the wound lacked jagged edges, skin flaps or hematoma generally associated with blunt trauma. Notably, the victim told the doctor that he had been shot. Despite the absence of testimony from the victim and his friend, the record evidence established that defendant shot the victim. When the evidence is viewed in a neutral light, the verdict is not against the weight of that evidence (see People v Harwood, 139 AD3d 1186, 1188 [2016], lv denied 28 NY3d 1028 [2016]; People v Pine, 126 AD3d 1112, 1115-1116 [2015], lv denied 27 NY3d 1004 [2016]).
Supreme Court properly admitted the 911 call into evidence because the statements contained therein constituted excited utterances. Despite being hearsay, "[a]n out-of-court statement is properly admissible under the excited utterance exception when made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication" (People v Johnson, 1 NY3d 302, 306 [2003]; accord People v Haskins, 121 AD3d 1181, 1183 [2014], lv denied 24 NY3d 1120 [2015]; see People v Edwards, 47 NY2d 493, 497 [1979]). "Underlying this exception is the assumption that a person under the influence of the excitement precipitated by an external startling event will lack the reflective capacity essential for fabrication and, accordingly, any utterance he [or she] makes will be spontaneous and trustworthy" (People v Edwards, 47 NY2d at 497; accord People v Johnson, 1 NY3d at 306).
On the 911 call, the victim's friend stated that a man had a gun and had "possibly shot [his] friend." A shooting generally constitutes a startling event (see e.g. People v Brown, 70 NY2d 513, 520 [1987]; People v Chin, 148 AD3d 925, 925 [2017], lv denied 29 NY3d 1124 [2017]; People v Garrison, 39 AD3d 1138, 1139-1140 [2007], lvs denied 9 NY3d 844, 851 [2007]). The caller was uncertain whether the man (i.e., defendant) had left the scene, implying that the call was relatively contemporaneous to the incident. Based on police officer testimony, the time of the call and the time on a video recording showing defendant leaving the scene, it can be inferred that the victim's friend called 911 shortly after the incident. The caller's tone, words and manner of speech indicate that throughout the call he was shaken and still under the stress of the event. Accordingly, the excited utterance exception applied, and Supreme Court properly admitted the 911 tape for the truth of the matter asserted therein (see People v Haskins, 121 AD3d at 1184; compare People v Cantave, 21 NY3d 374, 382 [2013]). Furthermore, defendant's Confrontation Clause rights were not violated because the statements uttered during the 911 call, which was made for the purpose of obtaining emergency assistance, were nontestimonial (see [*3]People v Nieves-Andino, 9 NY3d 12, 15-16 [2007]; People v Carrasquillo-Fuentes, 142 AD3d 1335, 1337-1338 [2016], lv denied 28 NY3d 1143 [2017]; People v Lind, 133 AD3d 914, 915-916 [2015], lv denied 27 NY3d 1153 [2016]).
Defendant was not deprived of meaningful representation. "A claimed violation of the constitutional right to the effective assistance of counsel will not survive judicial scrutiny so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Taylor, 126 AD3d 1120, 1121 [2015] [internal quotation marks, brackets and citations omitted], lv denied 25 NY3d 1172 [2015], cert denied ___ US ___, 136 S Ct 1172 [2016]). Defendant argues that counsel was ineffective for failing to object to portions of the 911 tape based on lack of foundation, failing to object during the prosecutor's summation and requesting an inappropriate missing witness charge.
The statement in the 911 call that defendant "possibly shot" someone had a foundation. Contrary to defendant's assertion that the caller was entirely speculating about the perpetrator having a gun, the caller stated that "the guy was just right in front of me with the gun." This language indicates that the caller's statement was based on personal knowledge from his own observations. As there was a sufficient foundation for admission of the statement, any objection would have been futile. Thus, the failure to object did not constitute ineffective assistance (see People v Caban, 5 NY3d 143, 152 [2005]; People v Weatherspoon, 86 AD3d 792, 793 [2011], lv denied 17 NY3d 905 [2011]).
During summation, defense counsel called the victim and his friend cowards for not appearing in court to testify, and asserted that they were afraid to come to court to have their lies exposed. The prosecutor, in his summation, discounted this argument and asserted that the victim had another reason to be afraid and not testify, namely, that defendant had tried to kill him. This was a fair response to the defense summation, based on the evidence concerning the crimes at issue, and did not imply that defendant had tried to intimidate the witnesses by threatening them at some time after the incident in question. Thus, an objection would not have been sustained.
Counsel sought and obtained a missing witness charge as to the victim and his friend, but defendant contends that the charge was improperly addressed to the issue of identification rather than to whether the victim was actually shot by anyone. We disagree with defendant's assertion that the charge as given stated or implied that the perpetrator had a gun or that the victim was definitely shot. Even if counsel erred by failing to properly craft his request for a missing witness charge, this mistake "was not so egregious and prejudicial as to constitute one of the rare cases where a single error results in ineffectiveness" (People v Ford, 110 AD3d 1368, 1370 [2013], lv denied 24 NY3d 1023 [2014]; see People v Caban, 5 NY3d at 152). From his opening through summation, counsel consistently pursued a reasonable strategy of attacking the People's case for failing to obtain testimony from the only alleged witnesses and as lacking direct proof that the victim was shot. In addition to procuring a concession from the doctor that the victim's wound may not have been from a gunshot, counsel obtained an acquittal of the attempted murder count (see People v Bowman, 139 AD3d 1251, 1253 [2016], lv denied 28 NY3d 927 [2016]). Considering the record as a whole, defendant received meaningful representation (see People v Smith, 157 AD3d 978, 982 [2018], lvs denied ___ NY3d ___ [May 22, 2018]).
This Court's review of the grand jury minutes reveals no error warranting reversal (see [*4]People v Nelson, 156 AD3d 1112, 1116 n 1, [2017]). Finally, the sentence is not harsh or excessive (see People v Lozada, 35 AD3d 969, 971 [2006], lv denied 8 NY3d 947 [2007]).
Devine, Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.