People v Ahmeti (2021 NY Slip Op 50481(U))

[*1]

People v Ahmeti (Ilir)

2021 NY Slip Op 50481(U) [71 Misc 3d 139(A)]

Decided on May 21, 2021

Appellate Term, Second Department

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on May 21, 2021
SUPREME COURT, APPELLATE TERM, SECOND
DEPARTMENT, 2d, 11th and 13th JUDICIAL DISTRICTS
PRESENT: : THOMAS P. ALIOTTA, P.J., MICHELLE WESTON, WAVNY
TOUSSAINT, JJ

2015-1784 Q CR

The People of the State of New York,
Respondent,
against
Ilir Ahmeti, Appellant. 

Appellate Advocates (Grace DiLaura and Anders Nelson of counsel), for appellant.
Queens County District Attorney (John M. Castellano, Johnnette Traill and Michael J. Curtis of
counsel), for respondent.

Appeal from a judgment of the Criminal Court of the City of New York, Queens County
(Elisa S. Koenderman, J.), rendered November 19, 2014. The judgment convicted defendant,
after a nonjury trial, of attempted assault in the third degree and harassment in the second degree,
and imposed sentence.

ORDERED that the judgment of conviction is reversed, on the law, and, as a matter of
discretion, in the interest of justice, the accusatory instrument is dismissed.
In this prosecution for attempted assault in the third degree (Penal Law §§ 110.00,
120.00 [1]), attempted criminal obstruction of breathing or blood circulation (Penal Law
§§ 110.00, 121.11 [a]), and harassment in the second degree (Penal Law § 240.26
[1]), defendant moved for a missing witness charge after the People failed to call the complainant
as a witness. In doing so, defendant argued that the People made no attempt to secure the
complainant's presence at trial. The People responded that, according to the prosecutor formerly
assigned to the case, the complainant was living in France, was not coming back, and that there
was never an intent to proceed with the complainant. The Criminal Court denied defendant's
motion. At the conclusion of the trial, the court found defendant guilty of attempted assault in the
third degree and harassment in the second degree, and imposed sentence. Defendant now appeals,
maintaining that the court erred in failing to grant his request for a missing witness charge. We
agree.
A missing witness charge allows the factfinder "to draw an unfavorable inference based on a
party's failure to call a witness who would normally be expected to support that party's version of
events" (People v Savinon, 100 NY2d 192, 196 [2003]). The proponent of a missing
witness charge must first demonstrate "(1) 'that there is an uncalled witness believed to be [*2]knowledgeable about a material issue pending in the case,' (2) 'that
such witness can be expected to testify favorably to the opposing party,' and (3) 'that such party
has failed to call' the witness to testify" (People v Smith, 33 NY3d 454, 458-459 [2019], quoting People
v Gonzalez, 68 NY2d 424, 427 [1986]). Once this initial showing has been made, the burden
shifts to the opponent to "account[ ] for the witness's absence or demonstrat[e] that the charge
would not be appropriate" (People v Smith, 33 NY3d at 459). As relevant here, this
burden can be met by showing that "the witness is not 'available,' or that the witness is not under
the party's 'control' such that he [or she] would not be expected to testify in his or her favor"
(People v Gonzalez, 68 NY2d at 428). With respect to availability, an opposing party has
a preliminary obligation of showing that diligent efforts have been made to locate the witness and
"vague references" will not suffice (People v Vasquez, 76 NY2d 722, 725 [1990]).
Here, defendant satisfied his prima facie burden and the People failed to rebut this showing
by demonstrating the complainant's unavailability (see People v Smith, 33 NY3d at 460).
It is undisputed that the complainant was a key witness and her testimony would have been
material and favorable to the People's case. As to the availability element of the rule, the record
demonstrates that the trial prosecutor merely asserted that she had been informed by the former
assigned prosecutor that the witness moved back to France and that this case would be
prosecuted without the complainant. The trial prosecutor made no effort to confirm this
information herself. We find that the People's conclusory assertion was insufficient to satisfy the
People's burden in response to defendant's prima facie showing for a missing witness charge
(id.) and, thus, that the Criminal Court abused its discretion in declining to give itself the
charge (see People v Gonzalez, 68 NY2d at 431).
Moreover, we conclude that the error was not harmless and requires reversal (see People
v Smith, 33 NY3d at 461 [failure to give a missing witness charge as to victim's boyfriend
who was present at the shooting was not harmless]; People v Sanchez, 186 AD3d 626, 628 [2020] [failure to give a
missing witness charge as to the complainant's date, who was present during one of the charged
incidents, was not harmless]; People v
Marsalis, 22 AD3d 866, 869 [2005] [failure to give a missing witness charge as to the
complainant's brother was not harmless where "defendant's guilt consisted solely of the
complainant's identification, and the reliability of that identification was called into question"]).
Under harmless error analysis, before an appellate court can even consider whether the error
contributed to the verdict, the court must first determine whether the evidence of guilt, without
reference to the error, is overwhelming (see People v Mairena, 34 NY3d 473, 484-485 [2019]; People v
Crimmins, 36 NY2d 230, 241 [1975]). If the evidence of guilt is not overwhelming, the
court's inquiry ends and " 'there is no occasion for consideration of any doctrine of harmless error'
" (People v Mairena, 34 NY3d at 484-485, quoting People v Crimmins, 36 NY2d
at 241). In this case, the evidence of defendant's guilt was hardly overwhelming. Other than the
missing complainant's out-of-court declarations identifying defendant as her assailant, there was
no proof implicating defendant as the perpetrator of the crime. Since defendant already served his
sentence years ago, we see no penological purpose in remanding the matter for a new trial.
Instead, we dismiss the accusatory instrument in the interest of justice (see People v Anderson, 66 Misc 3d
138[A], 2020 NY Slip Op 50091[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists
2020]).
In light of our determination that reversal and dismissal is warranted, we need not review
[*3]defendant's remaining contentions.
Accordingly, the judgment of conviction is reversed and the accusatory instrument is
dismissed.
WESTON and TOUSSAINT, JJ., concur.
ALIOTTA, P.J., dissents and votes to affirm the judgment of conviction in the following
memorandum:
While I do not take issue with the conclusion of the majority that the court in this nonjury
trial erred in failing to grant defendant's request for a missing witness charge, I believe that the
error was harmless in light of the overwhelming evidence at hand, which included the credible
testimony of a police officer, the complainant's undisputed injuries and the medical records.
Certainly, the trial judge, convinced beyond a reasonable doubt of defendant's guilt, was satisfied
that he had been correctly identified as the assailant. Consequently, there is no significant
probability that the error contributed to defendant's conviction (see People v Crimmins,
36 NY2d 230, 241-242 [1975]).
Defendant was charged in an information with assault in the third degree (Penal Law §
120.00 [1]), criminal obstruction of breathing or blood circulation (Penal Law § 121.11 [a]),
and harassment in the second degree (Penal Law § 240.26 [1]). Prior to trial, the charges of
assault in the third degree and criminal obstruction of breathing or blood circulation were
reduced to the attempt (Penal Law § 110.00) of each of those charges. 
At trial, a police officer testified that he responded to a radio run for an assault in progress
and, upon reaching the fourth floor of a multi-dwelling residence, he heard multiple people
screaming, including a woman's voice. Upon knocking on the door, the complainant answered.
The police officer described the complainant as "disheveled," with a "red mark on her face, "her
blood vessels in her eyes were broken so the white of her eyes was red," "she was visibly
shaken," "she was crying," and "she was very upset." The officer further testified that the
complainant's breathing was "shallow and rapid," and it appeared that "she was gasping for air."
The officer immediately asked the complainant, "who did that to you," to which the complainant
responded by pointing to defendant, who was seated behind her. 
The Criminal Court admitted into evidence portions of the complainant's medical records
arising from this incident. The diagnosis was "domestic violence" and an "abrasion." Medical
personnel noted that the complainant presented with multiple bruises to both eyes, left cheek,
right side of her neck, and left upper arm, as well as "subconjunctival hemorrhage [burst blood
vessel] in her right eye." Under the "history of present illness section," the complainant reported
being "scratched and [sic] in the face, grabbed [around] the neck[,] and punched in the left
shoulder" by her "boyfriend." Portions of the medical records referenced defendant by name. The
People proffered that the complainant was unavailable to testify because she moved back to
France shortly after the incident.
Defendant acknowledged that the complainant had injuries, but testified that he never struck
the complainant and did not know how she sustained the injuries. Defendant's live-in cousin
testified that he was at the apartment at the time, and never observed any bruises on the
complainant. Following the trial, defendant was convicted of attempted assault in the third degree
and harassment in the second degree.
On appeal, defendant first contends that the Criminal Court erred by admitting, as an [*4]excited utterance, the complainant's gesture to the responding
officer, which implicated defendant, and which violated his right to confrontation. In order for a
statement to qualify as an excited utterance, it must be "made under the stress of excitement
caused by an external event, and not the product of studied reflection and possible fabrication"
(People v Johnson, 1 NY3d
302, 306 [2003]), with the utterance being " 'spontaneous and trustworthy' " (id.,
quoting People v Edwards, 47 NY2d 493, 497 [1979]). Here, upon arriving at the scene,
the officer heard screaming coming from defendant's apartment and, upon entering, he observed
red marks on the complainant's face and broken blood vessels in her eyes. He described the
complainant as disheveled, crying, and breathing rapidly as if she was gasping for air.
Consequently, I find that the Criminal Court properly admitted the complainant's gesture as an
excited utterance exception to the hearsay rule.
I next turn to defendant's contention that the testimony of the officer with respect to the
complainant's gesture pointing to defendant violated defendant's Sixth Amendment
Confrontation Clause right. The Confrontation Clause provides, in pertinent part, that "[i]n all
criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses
against him." This procedural guarantee applies to both federal and state prosecutions (see
Pointer v Texas, 380 US 400, 406 [1965]; NY Const, art I, § 6). The Confrontation
Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial
unless [she or] he is unavailable to testify, and the defendant ha[s] had a prior opportunity for
cross-examination" (see Crawford v Washington, 541 US 36, 53-54 [2004]; see also
Davis v Washington, 547 US 813, 821 [2006]; People v Brown, 13 NY3d 332, 338 [2009]). "The key inquiry
focuses on the category that a statement falls into—whether the nature of the statement or
record is testimonial or nontestimonial" (People v Pealer, 20 NY3d 447, 453 [2013]; see Michigan v
Bryant, 562 US 344, 352-354 [2011]; Davis v Washington, 547 US at 823-824).
Whether, here, the police officer's primary reason for making the inquiry, which elicited the
challenged gesture, was to respond to an ongoing emergency is a fact-based question (see People v Nieves-Andino, 9 NY3d
12, 15 [2007]).
Upon review of the record, I find that the complainant's gesture to the responding officer was
not testimonial since it was "made in the course of police interrogation under circumstances
objectively indicating that the primary purpose of the interrogation [was] to enable police
assistance to meet an ongoing emergency" (People v Bradley, 8 NY3d 124, 127 [2006] [internal quotation
marks omitted]; see also Michigan v Bryant, 562 US 344; Nieves-Andino, 9
NY3d at 14-16; People v Clay, 88
AD3d 14, 17-25 [2011]; People v
Coleman, 16 AD3d 254 [2005]). The record demonstrates that the responding officer's
"first concern could only be for [the complainant's] safety," given that he was responding to a
radio run for an assault in progress, heard screaming coming from the apartment upon his arrival,
and observed the complainant's injuries (Bradley, 8 NY3d at 127). I conclude that, when
the officer asked the complainant, "who did that to you," the officer's immediate task was
safety-related, as he wanted to ascertain what had caused the complainant's undisputed injuries so
that he could decide what, if any, action was necessary to prevent further harm.
Defendant next contends that the Criminal Court's admission into evidence of the portions of
the complainant's medical records, which referenced "domestic violence," specifically named
defendant, and contained statements that conveyed that the complainant's boyfriend had [*5]struck her, did not properly fall under the business records
exception to the hearsay rule, and violated defendant's Sixth Amendment Confrontation Clause
right. Generally, business records are deemed trustworthy because they reflect routine business
operations and the person making the particular entry has the responsibility to keep accurate
records that can be relied upon for business purposes (see Williams v Alexander, 309 NY
283, 286 [1955]; see also People v
Ortega, 15 NY3d 610, 617 [2010]; People v Greenlee, 70 AD3d 966 [2010]). Medical records
routinely fall within the business records exception (see CPL 60.10) to the hearsay rule
when they "reflect[] acts, occurrences or events that relate to diagnosis, prognosis or treatment or
are otherwise helpful to an understanding of the medical or surgical aspects of [the particular
patient's] hospitalization" (Williams, 309 NY at 287 [internal quotation marks and
citations omitted]). In the unique context of domestic violence cases, the Court of Appeals has
determined that references in medical records to "domestic violence" and to the existence of a
safety plan are admissible under the business records exception to the hearsay rule
(Ortega, 15 NY3d at 619).
Here, I find that the description in the medical records of the alleged attack, which included
defendant's name and referred to "domestic violence" and that defendant's boyfriend had struck
the complainant, and references to "domestic violence" were all relevant to the complainant's
diagnosis and treatment. Notably, "domestic violence" was part of the attending physician's
diagnosis and these references were paramount to the complainant's continuing care plan.
Consequently, the Criminal Court properly admitted the challenged portions of the complainant's
medical records into evidence under the business records exception.
Furthermore, I find no merit to defendant's contention that the admission of these portions of
the complainant's medical records violated the Confrontation Clause. Applying the primary
purpose test (see Davis v Washington, 547 US at 822), I am of the opinion that the record
demonstrates that the statements and references in the complainant's medical records were not of
a testimonial character. The primary purpose of the inquiries by medical personnel and a social
worker was to determine the mechanism of injury to render a diagnosis, administer medical
treatment, and develop a continuing care plan that appropriately met the complainant's unique
needs as an alleged victim of domestic violence. Indeed, the United States Supreme Court has
noted that "statements to physicians in the course of receiving treatment would be excluded, if at
all, only by hearsay rules" and not the Confrontation Clause (Giles v California, 554 US
353, 376 [2008]; see People v Duhs,
16 NY3d 405, 409 [2011]; Michigan v Bryant, 562 US 344, 362 n 9).
Finally, upon the exercise of our factual review power (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342,
348-349 [2007]), while according great deference to the trier of fact's opportunity to view the
witnesses, hear their testimony, observe their demeanor, and assess their credibility (see People v Lane, 7 NY3d 888,
890 [2006]; People v Mateo, 2 NY3d 383, 410 [2004]; People v Bleakley, 69
NY2d 490, 495 [1987]), I would find that the verdict was not against the weight of the evidence
(see People v Romero, 7 NY3d
633 [2006]). 
Accordingly, I would affirm the judgment of conviction.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: May 21, 2021