People v Covlin (2022 NY Slip Op 03350)





People v Covlin


2022 NY Slip Op 03350


Decided on May 24, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 24, 2022

Before: Renwick, J.P., Friedman, Mendez, Higgitt, JJ. 


Ind. No. 4339/15 Appeal No. 15997 Case No. 2019-3560 

[*1]The People of the State of New York, Respondent,
v
Roderick Covlin, Defendant-Appellant.


The Feinman Law Firm, White Plains (Steven N. Feinman of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Beth Fisch Cohen of counsel), for respondent.



Judgment, Supreme Court, New York County (Ruth Pickholz, J.), rendered April 10, 2019, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 25 years to life, unanimously affirmed.
The verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]). Moreover, we find that there was overwhelming evidence of defendant's guilt of intentionally killing his wife. There was ample evidence that the victim's death was a homicide that had been disguised as an accident. The doctor who conducted the autopsy concluded that the victim's death was caused by a chokehold, and there was evidence that defendant was proficient in Taekwondo and knew how to perform a lethal chokehold. While defendant and the victim were in divorce proceedings, defendant had a motive to kill his wife in order to inherit her money before she modified her will, as well as to access money defendant's children would inherit from the victim, their mother. Defendant had an opportunity to commit the crime because he lived across the hall from his wife, and there was evidence that he had a key to her apartment; it was also highly unlikely that an unknown person had an opportunity to commit the crime. There were many additional layers of persuasive circumstantial evidence, including evidence of defendant's incriminating behavior shortly before and after his wife's death, along with extensive evidence that defendant made efforts to cover up the crime, and otherwise displayed a consciousness of guilt.
Except as noted, each item of evidence that defendant challenges as hearsay was correctly admitted either under a hearsay exception or for a legitimate purpose other than for its truth. Defendant's statements to various people were admissible as party admissions (see People v Chico, 90 NY2d 585, 589 [1997]). A nanny's testimony about the victim's statement about being assaulted by defendant on April 20, 2009 was admissible as an excited utterance (see People v Johnson, 1 NY3d 302, 306 [2003]), based on the witness's account of the victim's distraught emotional state and the other circumstances of the statement. However, the People failed to show that the victim's other statements about the April 20 incident, or the victim's statements about a May 10, 2009 incident of defendant's alleged verbal abuse, were excited utterances in the absence of any showing of the requisite immediacy (see id.). The victim's statements in written form, including affidavits filed in court proceedings as well as emails and text messages, were admissible to show the victim's state of mind, as relevant to defendant's motive, because it could be inferred that defendant was aware of the affidavits and there was evidence of his surveillance of his wife's emails and text messages (see People v Reed, 169 AD3d 573 [1st Dept 2019], lv denied 33 NY3d 1107 [2019]). In contrast, the victim's oral statements [*2]outside defendant's presence were not admissible to show her state of mind, in the absence of evidence that defendant was aware of those statements (see People v Wlasiuk, 32 AD3d 674, 679 [3d Dept 2006], lv dismissed 7 NY3d 871 [2006]).
Nevertheless, any error in admitting hearsay evidence was harmless (see People v Crimmins, 36 NY2d 230 [1975]). As noted, there was overwhelming evidence of defendant's guilt. In addition, the evidence we find inadmissible essentially covered matters that were separately established by properly admitted evidence.
Defense counsel opened the door to a witness's testimony about defendant's uncharged bad acts against her. Except for the evidence that we have found inadmissible on the ground of hearsay, the court properly admitted various other evidence of defendant's uncharged bad acts relevant to establish his motive (see People v Dorm, 12 NY3d 16, 19 [2009]). Evidence of defendant's extramarital affairs and assault on his wife provided context for the separated couple's marital strife and generally supported an inference that defendant would expect to be disinherited in his wife's will soon, providing a motive to kill her before she could do so. Evidence of defendant's obsession with the game of backgammon was relevant to his motive of obtaining enough money to continue his lifestyle of playing backgammon without earning an income. Defendant's plans, after his wife's death, to kill his own parents, and his statement to his girlfriend that the only people he wanted to kill were those who tried to take his children away from him (implicitly referring to his parents), supported the People's theory that part of defendant's motive was to prevent anyone from depriving him of access to the money his children would inherit from the victim. Evidence that defendant used large amounts of money from his children's funds for his own personal purposes was probative of his motive to control such funds. The trial court providently exercised its discretion in admitting all of this evidence, and the remaining bad acts evidence challenged on appeal as more probative than prejudicial.
In general, prejudice arising from the admission of out-of-court statements and defendant's bad acts was minimized by the court's limiting instructions, although the court should not have instructed the jury to consider the victim's oral statements about defendant's possession of a key to her apartment as "background information about the marriage." There is no blanket hearsay exception for background information about a marriage that is received, or only relevant, for its truth (see People v Brooks, 31 NY3d 939, 942 [2018]).
The court also providently exercised its discretion in permitting the People to call an expert in martial arts and an expert in domestic violence (see generally People v Williams, 20 NY3d 579, 583-584 [2013]). Defendant's contention that the People failed to lay proper foundations for these experts' testimony is based on unavailing [*3]arguments including hearsay arguments rejected above. The martial arts expert's testimony about the lethal use of chokeholds was beyond the knowledge of the typical juror (see e.g. People v Rivers, 18 NY3d 222, 227-28 [2011]), and the court providently allowed him to demonstrate chokeholds on a plastic skeleton (see People v Acevedo, 40 NY2d 701, 704 [1976]).
The court correctly found that defendant's audio recording of his conversation with his parents was properly authenticated by the testimony of defendant's girlfriend, who was present during part of the conversation, and had heard the complete recording and read a transcript of the conversation. Defendant emailed two files containing the audio recording to his girlfriend and described the recording to her, and defendant's girlfriend identified the speakers in the recording at trial (see generally People v Ely, 68 NY2d 520, 527 [1986]). There was also an overlap between the portion of the recording that the witness actually heard and the remaining portion, which tended to support an inference of continuity (see People v Busgith, 189 AD3d 453 [1st Dept 2020], lv denied 36 NY3d 1095 [2021]). We also find that the court providently exercised its discretion in admitting the recording, because any prejudice was outweighed by the probative value in establishing defendant's motive.
Defendant's challenges to a silent surveillance video of defendant, while incarcerated, allegedly demonstrating a chokehold in front of another inmate, to the prosecutor's summation, to certain questions posed to the domestic violence expert, and to the presentence report are unpreserved, waived, or unreviewable, and we decline to review them in the interest of justice. As an alternative holding, we find no basis for reversal or a new sentencing proceeding. In particular, we find meritless defendant's arguments about a purported change in the prosecutor's theory.
We find that any error in the court's remaining rulings was harmless. Defendant's ineffective assistance of counsel claims based on his trial counsel's failure to raise the above-mentioned unpreserved issues are unreviewable on direct appeal because they involve matters outside the record concerning possible strategic explanations for not objecting (see e.g. People v Rios, 139 AD3d 620 [1st Dept 2016], lv denied 28 NY3d 973 [2016]). Accordingly, because defendant has not made a CPL 440.10 motion, the merits of the ineffectiveness claims may not be addressed on appeal. To the extent the existing record permits review of defendant's argument that his counsel was ineffective for failing to raise certain objections, we find that defendant received effective assistance under the state and federal standards (see People v Benevento, 91 NY2d 708, 713-14 [1998]; Strickland v Washington, 466 US 668 [1984]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 24, 2022