[865 NYS2d 44]

In the Matter of JONATHAN V., a Person Alleged to be a Juvenile Delinquent, Appellant.

In the Matter of DREW C., a Person Alleged to be a Juvenile Delinquent, Appellant.

In the Matter of MICHAEL B., a Person Alleged to be a Juvenile Delinquent, Appellant.

First Department, September 30, 2008

## APPEARANCES OF COUNSEL

*Frederic P. Schneider*, New York City, for Jonathan V., appellant.

*David Adam Goldstein*, New York City, for Drew C., appellant.

*Steven N. Feinman*, White Plains, for Michael B., appellant.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Norman Corenthal* and *Kristin M. Helmers* of counsel), for presentment agency.

## OPINION OF THE COURT

CATTERSON, J.

This case presents the question of whether the presumption of constructive possession of a firearm can be applied to persons riding on a charter bus that was used to transport an extended family from Staten Island to a violent rendezvous in Harlem. At the outset, we note that as to each appellant, the court's finding was based on legally sufficient evidence and was not against the weight of the evidence. (*See People v Danielson*, 9 NY3d 342, 348-349 [2007].) There is no basis for disturbing the court's determinations concerning credibility.

The record reflects that Luna Suarez, mother of the appellant Jonathan V., worked for Atlantic Express bus company as a dispatcher. The operating manager for Atlantic Express testified that the driver of the bus, Linwood Saey, was assigned to bus number 612 on a "commuter run" between Staten Island and Madison Avenue south of 59th Street. This run was only made in the morning and Saey had no authority to remove the bus from the Atlantic Express yard located in Staten Island. The manager testified that after Suarez appeared agitated while making a phone call, she asked to leave work early and asked Saey to drive her home. The record indicates that the manager did not anticipate that Saey would take a full size purple charter bus to drive Suarez, rather than a company car. Suarez and Saey then traveled to various locations throughout Staten Island where members of Suarez's extended family, including the three appellants, boarded the bus. After leaving Staten Island, the charter bus was driven to Harlem in order to pick up Suarez's daughter. Shortly after arriving in Harlem, a shootout ensued.

When the police arrived at 155th Street between Park and Madison Avenues in response to a call of "shots fired" they found a man lying face up in the street bleeding from a gunshot

wound to the head. A witness stated that the people that might have been involved had fled on a purple charter bus.

The police received information that a charter bus matching that description was parked in front of a nearby hospital. Upon arriving at the hospital, the police saw a group of people exit the bus, including the three minor appellants, two of whom had gunshot wounds. The officers entered the bus and found pools of blood, baseball bats, bloody clothing, and a loaded pistol in plain view on the floor. The bus driver and all the passengers on the bus, including the three appellants, were arrested.

Appellant Jonathan V. contends that the statutory presumption of possession (Penal Law § 265.15 [3]) is inapplicable by its terms, because the bus where the weapon was discovered was a "public omnibus" used to fulfill a contract with the New York City Department of Transportation. Appellant Drew C. contends that a bus is not an automobile, and that the absence of a definition of "public omnibus" in the statute renders it unconstitutionally vague. They both suggest that the weapon may have been left on the bus by any of "countless Staten Island commuters" who had used the bus that morning.

■ The Family Court correctly concluded that the automobile presumption applied because the charter bus, while clearly a "public omnibus" when it ran its route on the morning of November 15, 2006, was no longer being used as such when the gun was found. The court noted:

> "Not only did the bus stop fifty-six blocks beyond the DOT stop, but the statements by [Michael B.] and [Jonathan V.] show that they understood that the bus was taking them on a family outing, which was closed to the general public . . . Another clear indication to [them] of the bus' private status at the pertinent time is that neither [one] paid a fare to ride. Overall, given that the 612 bus was operating off of [its] public route, and let passengers come on and off the bus at their leisure, any reasonable person, including [the appellants], would have understood that the bus was being used in a private capacity."

Section 265.15 of the Penal Law provides, in relevant part, "3. The presence in an automobile, other than . . . a public omnibus, of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon, instrument or appliance is found." (*See People v*

*Verez,* 83 NY2d 921 [1994] [presumption applied where weapon was found between front bucket seats of a van]; *People v Lemmons,* 40 NY2d 505 [1976]; *Matter of Mark S.,* 274 AD2d 334 [1st Dept 2000] [ownership or possession by one occupant "does not, by itself, negate the statutory presumption of possession by the other occupants as well"].)

The Vehicle and Traffic Law defines a "bus" as a "motor vehicle having a seating capacity of fifteen or more passengers in addition to the driver and used for the transportation of persons" (§ 104). It separately defines "omnibus" as a "motor vehicle used in the business of transporting passengers for hire," other than agricultural workers (§ 126).

The legislative history of the statutory presumption, which was originally enacted in 1936, indicates that the "public omnibus" exception was included to appease legislators who were concerned "as to the dire consequences that might under the earlier bill result [*sic*] to an innocent person riding in a public omnibus, travelling in some vehicle like a motorboat or railroad train or airplane" (May 2, 1936 letter from Committee on Criminal Courts to Governor Herbert Lehman, Bill Jacket, L 1936, ch 390). The legislative history also indicates that an earlier draft exempted omnibuses carrying more than seven passengers, but that the size limitation was removed. The legislative history thus supports the conclusion that the exception only applies to buses that are being used as public omnibuses to transport passengers for hire.

Moreover, as a matter of statutory construction, the Legislature's creation of an exclusion for "public omnibuses" implies that private omnibuses or buses of other types are not excluded from the automobile presumption. (McKinney's Cons Laws of NY, Book 1, Statutes § 213, Comment ["there is a strong implication that what is excepted would have been within the prohibition if it had not been excepted," and "(w)hen one or more exceptions are expressly made in a statute, it is a fair inference that the Legislature intended that no other exceptions should be attached to the act by implication"].)

As for Drew C.'s contention that the statute is unconstitutionally vague because it does not define the term "public omnibus," the appellant has not overcome the strong presumption of constitutionality. (*See People v Tichenor,* 89 NY2d 769 [1997], *cert denied* 522 US 918 [1997].) The absence of a definition in the Penal Law does not render the statute impermissibly vague, since the term is given its legal meaning as defined in the juris-

prudence of the state. (*See People v Reed*, 265 AD2d 56, 66 [2d Dept 2000], *lv denied* 95 NY2d 838 [2000].) As so understood, "the statute [is] sufficiently clear to apprise a person of ordinary intelligence that the sort of conduct in which the defendant engaged comes within the statute's prohibition." (*People v Garcia*, 29 AD3d 255, 261 [1st Dept 2006], *lv denied* 7 NY3d 789 [2006] [definition of "companion animal" not unconstitutionally vague]; *see also United States v Harriss*, 347 US 612, 617 [1954].)

Accordingly, at the time of the incident, it is beyond dispute that the charter bus was not a public omnibus transporting passengers for hire, but was simply an ordinary, albeit large and purple, vehicle being used by two employees to transport a group of their family and acquaintances on a private rendezvous. Consequently, the presentment agency was entitled to rely on the statutory presumption to establish the weapon possession charges against the three appellant passengers.

Where the presumption is applicable, multiple occupants of a motor vehicle may be found guilty of possession of a single weapon. (*See e.g. Matter of Mark S.*, 274 AD2d at 334.) A presumption is valid if "the fact proved, that is, the fact from which the inference proceeds, be rationally connected to the fact inferred." (*People v Hildebrandt*, 308 NY 397, 404 [1955].) The court's application of this permissive presumption to the facts of this case was constitutional because, under all the circumstances, there was a rational connection between the facts proved and the ultimate fact presumed. (*See generally Tot v United States*, 319 US 463, 467 [1943]; *People v McKenzie*, 67 NY2d 695, 696 [1986]; *People v Terra*, 303 NY 332, 335 [1951].)

Although the Family Court was not required to draw an inference of possession, under the circumstances there was sufficient evidence to establish that each of the three appellants was present on the bus where the weapon was recovered, and the statutory presumption could rationally be applied, notwithstanding the number of people on the bus.

In this case, police testimony provided a sufficient basis for finding that each appellant was on the bus from the time it left the scene of the shooting until it arrived at the hospital where two of them were treated for gunshot wounds. While this evidence may not be a particularly strong basis for inferring that any of the appellants individually possessed the loaded weapon found on the floor of the bus, the statutory presumption permits the inference to be drawn and deference is generally accorded to

the trier of facts. (*See Matter of Willie W.*, 32 AD3d 479 [2d Dept 2006]; CPL 470.20 [5]; *People v Bleakley*, 69 NY2d 490, 495 [1987].) We have considered and rejected the appellants' remaining arguments, including constitutional claims, concerning the statutory presumption and the evidence presented at the fact-finding hearing.

■ While Drew C. contends the court erred in reopening the suppression hearing to allow Sergeant Anzelino to testify, we find that the suppression court had discretion to reopen the suppression hearing before rendering a decision, in order to allow the presentment agency to elicit additional evidence, in the absence of "risk of tailoring, bad faith by the [presentment agency] or prejudice to [the appellant]." (*People v Ramirez*, 44 AD3d 442, 443 [1st Dept 2007], *lv denied* 9 NY3d 1008 [2007]; *see People v Cestalano*, 40 AD3d 238 [1st Dept 2007], *lv denied* 9 NY3d 921 [2007].) This Court has found that nothing in *People v Havelka* (45 NY2d 636 [1978]), the case relied upon by the appellant, deprives the suppression court of discretion to permit additional testimony to cure a deficiency in proof prior to a decision being rendered. (*People v Cestalano*, 40 AD3d at 238-239.)

■ The court properly denied appellant Jonathan V.'s motion to suppress his statement. The court properly determined that despite reasonable efforts, the authorities were unable to notify a parent and acted reasonably, under all the circumstances, in interviewing this appellant in the presence of a woman who identified herself as his aunt. (*See* Family Ct Act § 305.2.) The evidence also supports the court's conclusion that this appellant's gunshot wound and accompanying medical treatment did not undermine the voluntariness of his statement. (*See People v Hughes*, 280 AD2d 694, 695 [2001], *lv denied* 96 NY2d 801 [2001].)

Accordingly, the orders of disposition of the Family Court, New York County (Mary E. Bednar, J.), entered on or about June 27, 2007 (Jonathan V.) and June 11, 2007 (Drew C. and Michael B.), which adjudicated the appellants juvenile delinquents, upon fact-finding determinations that they each committed an act which, if committed by an adult, would constitute the crime of criminal possession of a weapon in the second degree, and that they each committed the act of unlawful possession of a weapon by a person under 16, and placed each of them with the Office of Children and Family Services for an initial period of up to 18 months, should be affirmed, without costs.

FRIEDMAN, J.P., WILLIAMS and ACOSTA, JJ., concur.

Orders of disposition, Family Court, New York County, entered on or about June 27, 2007 (Jonathan V.) and June 11, 2007 (Drew C. and Michael B.), affirmed, without costs.