[932 NE2d 879, 906 NYS2d 523]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NAYSHAWN PERKINS, Appellant.

Argued June 2, 2010; decided June 29, 2010

### POINTS OF COUNSEL

*Joshua M. Levine,* New York City, and *Lynn W.L. Fahey* for appellant. Permitting the People to elicit the complainant's identification of appellant's picture in a photographic array, based on appellant's original refusal to participate in a lineup, violated due process and the rule prohibiting photographic identification evidence at trial. (*People v Huertas,* 75 NY2d 487; *People v Caserta,* 19 NY2d 18; *People v De Martini,* 213 NY 203; *People v Jung Hing,* 212 NY 393; *People v Torres,* 184 AD2d 605; *People v Brewster,* 100 AD2d 134, 63 NY2d 419; *People v Cioffi,* 1 NY2d 70; *People v Spinello,* 303 NY 193; *People v Pleasant,* 54 NY2d 972; *People v Lindsay,* 42 NY2d 9.)

*Charles J. Hynes, District Attorney,* Brooklyn (*Victor Barall* and *Leonard Joblove* of counsel), for respondent. Defendant's claim that the trial court erred in admitting evidence that he had been identified in a photographic array is unpreserved for appellate review. Furthermore, the claim is meritless. In any event, any error was harmless. (*People v Reed,* 84 NY2d 945; *People v Geraci,* 85 NY2d 359; *People v Sanchez,* 65 NY2d 436; *Diaz v United States,* 223 US 442; *People v Crimmins,* 36 NY2d 230; *People v Robinson,* 88 NY2d 1001; *People v Luperon,* 85 NY2d 71; *People v Hughes,* 137 NY 29; *People v Hicks,* 6 NY3d 737; *People v Flores,* 84 NY2d 957.)

### OPINION OF THE COURT

READ, J.

On October 31, 2002, four men carried out an armed robbery at a clothing store in Brooklyn, during which one of the robbers

shot a store employee in the head and chest. The victim survived. Acting on information that defendant Nayshawn Perkins might have been involved in the robbery, the police created a photographic array of six pictures, including his, and showed the array to the victim four days after the crime; the victim immediately recognized defendant as "the guy that shot me."

On February 3, 2003, about three months after the crime, defendant was arrested. The victim was summoned to the police station the next day to view a lineup. When the detective tried to organize it, however, defendant balked: he insisted that he was not going to participate; he kicked and spat and cursed at the detective, and refused to sit still and face forward, holding a lineup number. As a result of defendant's obstreperousness, it was impossible to carry out the lineup, but the detective managed to take defendant's photograph (a Polaroid head shot) by persuading him that his picture was required for a "prisoner movement slip." The detective also took head shots of the five men who were to have served as fillers in the lineup, and laid out the six photographs in a row on a table for the victim to look at. The victim pointed out defendant's photograph, identifying him as his assailant. On July 21, 2003, 5½ months after the aborted lineup and almost nine months after the crime, the victim selected defendant again, this time in a court-ordered, double-blind lineup.

Following a *Wade* hearing, Supreme Court held that the pretrial identification procedures undertaken by the police were not unduly suggestive, and therefore denied defendant's motion to suppress the victim's lineup identification of defendant in July of 2003, and to preclude his prospective in-court identification testimony. While the prosecutor also maintained that she should be permitted to introduce at trial evidence of the victim's photographic identification of defendant in February of 2003 as well as the precipitating circumstances, the hearing court declined to rule on these issues in deference to the trial judge.

Before jury selection at defendant's trial in May of 2005, the prosecutor renewed her request to present to the jury the victim's photographic identification of defendant on February 4, 2003, as well as evidence as to why the police were unable to conduct a lineup that day.* The prosecutor argued that because defendant obstructed the corporeal lineup, he should not be

---

* By the time the case went to trial, there was additional evidence linking defendant to the robbery: 13 of the latent fingerprints lifted from plastic

heard to complain about the admission of the victim's identification made after viewing the photographs taken of him and the fillers. The prosecutor further contended that defendant's behavior thwarting the lineup was admissible as evidence of consciousness of guilt.

The trial judge ruled that the victim's photographic identification of defendant in February of 2003 was admissible, remarking that "[c]ommon sense dictates the defendant may not sabotage efforts to see if somebody can identify him in a lineup by refusing to participate, and then the pictures can't come in because it's not a corporeal lineup. Common sense would dictate that." When defense counsel objected on the ground that the People were not prejudiced by defendant's conduct because of the victim's eventual lineup identification of him, the judge disagreed. She explained that

> "the jury may very well feel a person [nine] months later is not as reliable as somebody closer to the incident. So—both of them would be admissible; and, of course, the evidence that he resisted participation in a lineup, since that is clearly a possible consciousness of guilt evidence."

The next day, defense counsel renewed his opposition to admission of the photographic identification. He reiterated that the People were not prejudiced, and also protested that counsel was not present at the station house in February of 2003. He acknowledged, however, that if he cross-examined anyone about the lengthy gap in time between the crime and the lineup in July of 2003, this would open the door to the identification testimony the People sought to introduce. The trial judge again commented, though, that the jury "might wonder how somebody could possibly recognize someone all that time later," even if not prompted by defense counsel's questioning. Accordingly, the judge adhered to her earlier ruling, adding that

> "[t]he fact that [defendant] didn't have counsel present . . . that has nothing to do with what the issue is. The issue is there is testimony that [defendant] refused to cooperate in a lineup, and for that reason they used another procedure closer to the event. And I think that would be an appropriate way of doing it. Then the second lineup was conducted

---

garbage bags abandoned by the robbers in their haste to flee from the scene of the crime were found to match defendant's fingerprints.

sometime later, when apparently new counsel was able to persuade [defendant] to cooperate . . . .

"I think both of those should be properly before the jury, because [the prosecutor] is maintaining it was consciousness of guilt to cause him not to cooperate. I think that is a fair inference that could be drawn if the jury believes it happened."

The jury subsequently convicted defendant of second-degree attempted murder (Penal Law §§ 110.00, 125.25) and first-degree robbery (Penal Law § 160.15). On June 14, 2005, the trial judge sentenced defendant as a second felony offender to concurrent terms of 25 and 10 years in prison for attempted murder and robbery respectively. Defendant took an appeal, arguing that the trial judge should not have permitted the People to introduce the evidence of the victim's photographic identification of him in February 2003.

On April 14, 2009, a unanimous Appellate Division affirmed the judgment of conviction and sentence. After noting that defendant had "refused to participate" in the lineup that the police sought to conduct on February 4, 2003, the court observed that

"[i]n general, evidence regarding pretrial photographic identifications is not admissible at trial. This general prohibition is based in large part on the inference a jury may draw that possession by the police of the defendant's photograph was the result of prior arrests. Here, however, it was the defendant himself, who, by his refusal to participate in the lineup, made resort to the photographic identification necessary. A person lawfully in custody has no right to refuse to participate in a lineup. It would thus be inappropriate to allow the defendant's refusal to participate in a lineup to give rise to an inference by the jury that the identification testimony was suspect because the defendant was not identified in a lineup until nine months after the crime. Significantly, the jury was made aware that the defendant's photograph was taken on the day of the photographic 'lineup' and was not in the possession of the police by reason of a previous arrest. Under the circumstances here, therefore, it was not improper to admit evidence of the photographic

'lineup' " (61 AD3d 780, 781-782 [2d Dept 2009] [citations omitted]).

A Judge of this Court granted permission to appeal (13 NY3d 748 [2009]), and we now affirm.

At common law, a witness was barred from testifying that he had identified the defendant prior to trial, whether at a lineup or from photographs (*People v Huertas*, 75 NY2d 487, 493-494 [1990]). We have held, however, that section 393-b of the Code of Criminal Procedure carved out an exception to the common-law rule, but "only to the extent of permitting a witness to testify to a previous identification by himself of the defendant *in the flesh*" (*People v Caserta*, 19 NY2d 18, 21 [1966] [emphasis added]). We have cited two "well understood" reasons to justify excluding pretrial photographic identifications: it is "readily possible to distort pictures as affecting identity"; and a jury might infer that the police possessed a defendant's photograph because of previous run-ins with the law (*id.* at 21; *see also* Kamins, Criminal Law and Procedure, *Photo I.D. Evidence: Is it Time for a Change?*, NYLJ, Apr. 5, 2010, at 3, col 1 [exploring history of and controversy surrounding New York's exclusion— unique among the 50 states—of photographic identification as direct evidence in criminal trials]; *see also People v Woolcock*, 7 Misc 3d 203 [2005]).

Criminal Procedure Law § 60.30, like section 393-b from which it derives, has also been interpreted to apply only to the admissibility of testimony of a prior corporeal identification. But there is no indication that the Legislature intended to rule out photographic identification evidence in the event a defendant thwarts a lineup. As a result of his misconduct on February 4, 2003, defendant forfeited the right to rely on the evidentiary rules ordinarily barring the admission of photographic identification evidence, thus opening the way for the People to introduce the victim's identification of him from pictures taken the same day as and in lieu of the aborted lineup (*see People v Geraci*, 85 NY2d 359, 366 [1995] [citing "the maxim that the law will not allow a person to take advantage of his own wrong," court concluded that a witness' grand jury testimony was properly admitted as direct evidence where the witness' unavailability at trial was procured by defendant through violence and threats, thus creating a "forfeiture dictated by sound public policy" (internal quotation marks omitted)]). Moreover, the testimony of the detective in charge of the lineup on February 4, 2003 dispelled any notion the jurors might otherwise have

harbored that the police already possessed the photograph of defendant shown to the victim that day.

Finally, the trial judge did not abuse her discretion when she rejected defendant's claim that the People would suffer no prejudice because the victim eventually identified him in a lineup in July of 2003. When a defendant's misconduct obstructs a corporeal identification, the determination of whether the People have been prejudiced such that evidence of a photographic identification is admissible lies within the trial court's discretion. The judge here reasonably concluded that the jurors might be more skeptical about the reliability of an identification made nearly nine rather than three months after the crime.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Order affirmed.