■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MICHAEL J. BIANCA, Appellant. [936 NYS2d 743]—

Stein, J.

The charges arise out of a drive-by shooting that occurred in
the early morning hours of August 22, 2009, in the vicinity of
Slick's Tavern in the City of Amsterdam, Montgomery County.
Witnesses reported seeing two black cars drive by Slick's
multiple times, each time firing at the bar and the people stand-
ing outside. A little while later, defendant was picked up by po-
lice from the Town of Glenville, Schenectady County, with two
other men, including Jose Maschio. He was turned over to the
Amsterdam Police Department, but was not arrested at that
time. While at the police station, defendant wrote out a state-
ment but refused to sign it. Multiple shell casings and projectiles
from at least two weapons were recovered from the crime scene.
However, no weapons were ever recovered, no spent shell cas-
ings were found in defendant's car and both defendant and
Maschio tested negative for gunshot residue later that day.

Defendant's conviction was not against the weight of the evi-
dence. "A person is guilty of reckless endangerment in the
second degree when he [or she] recklessly engages in conduct
which creates a substantial risk of serious physical injury to an-
other person" (Penal Law § 120.20). As relevant here, a person
is guilty of criminal possession of a weapon in the second degree
when such person possesses a loaded firearm with intent to use
the same unlawfully against another (see Penal Law § 265.03 [1]
[b]) or when such possession does not take place in such person's
home or place of business (see Penal Law § 265.03 [3]). "The
presence in an automobile . . . of any firearm . . . is presump-
tive evidence of its possession by all persons occupying such
automobile at the time such weapon . . . is found" (Penal Law
§ 265.15 [3]).

Here, multiple witnesses placed defendant at Slick's with Maschio, who was wearing a distinctive yellow hat, on the night of the incident. Several of those witnesses testified that an altercation occurred, after which defendant and Maschio left in a black Lexus. They further testified that they saw a black car—driven by defendant, with Maschio or someone in a yellow hat firing a weapon from within—return a half-hour later, along with a black Dodge Intrepid. Additionally, in the statement that defendant wrote out at the police station, he indicated that, after leaving Slick's, he dropped off two of his companions—not including Maschio—after which "we" returned to the bar. Defendant argues that the evidence suggests that two cars were involved, that only two guns were used and that one of those guns was stationary during the incident. Defendant also points to the testimony of witnesses who reported seeing pedestrians returning fire at the cars. Defendant contends that this evidence indicates that shots were only fired from one of the vehicles and that only the second vehicle (the Intrepid) contained physical evidence of shots having been fired from within it. Notwithstanding the absence of physical evidence of a weapon in defendant's vehicle, the jury apparently credited the testimony of the witnesses who observed shots being fired by Maschio from the vehicle driven by defendant. Even if a different verdict would not have been unreasonable, upon our own review of the evidence and "[a]ccording appropriate deference to the jury's unique opportunity to view the witnesses, hear the testimony and observe the demeanor of those individuals who testified, we do not find that its resolution of the credibility issues is against the weight of the evidence" (*People v Luck*, 294 AD2d 618, 619 [2002], *lv denied* 98 NY2d 699 [2002]; *see People v Romero*, 7 NY3d 633, 643-644 [2006]).

Nor are we persuaded that County Court improperly admitted the identification of defendant as a participant in the crimes by Penny Farquhar, one of the People's witnesses. Initially, we reject defendant's contention that the photographic array presented to Farquhar before trial should have been suppressed as unduly suggestive because defendant's head appeared smaller than the heads of other suspects in the array (*see People v Smiley*, 49 AD3d 1299, 1300 [2008], *lv denied* 10 NY3d 870 [2008]; *People v Means*, 35 AD3d 975, 976 [2006], *lv denied* 8 NY3d 948 [2007]; *People v Boria*, 279 AD2d 585, 586 [2001], *lv denied* 96 NY2d 781 [2001]). We are also satisfied that County Court properly determined that an independent basis existed for Farquhar's identification of defendant. At a combined *Huntley* and *Wade* hearing held on June 2, 2010, the People failed to produce the officer who conducted the photo array identification. County Court subsequently ruled that the People had not

met their burden of going forward, but did not specifically rule that the identification should be suppressed. Instead, the court scheduled an independent source hearing, sua sponte, and after the People's examination of Farquhar, found that she had an independent source and denied defendant's request to suppress her in-court identification of him.

We are of the view that, although County Court found that the People had failed to establish the reasonableness of the photo array identification procedure, inasmuch as the People offered no evidence regarding an independent source on the first day of the hearing—and the court did not determine the merits of such issue—and the second day of the hearing was limited to testimony in that regard, the conduct of a bifurcated *Wade* hearing did not provide the People with an opportunity to tailor the evidence and was, therefore, entirely proper (*see People v Havelka*, 45 NY2d 636, 643 [1978]; *People v Gragnano*, 63 AD3d 1437, 1439 [2009], *lv denied* 13 NY3d 939 [2010]; *Matter of Jonathan V.*, 55 AD3d 273, 279 [2008]). Moreover, County Court's determination that the People had established the existence of an independent source for Farquhar's identification of defendant was fully supported by the record.

Likewise, County Court properly denied defendant's motion to suppress the written statement he gave to police. The People concede that defendant had not been Mirandized and that he was in custody when he made such statement. However, Robert Richardson, a detective with the Amsterdam Police Department, testified that defendant offered to provide information regarding, among other things, the second car involved in the drive-by shooting and subsequently showed Richardson and another detective the location of that vehicle. Richardson further testified that, upon their return to the police department, defendant told him "[t]hat he wanted to help himself in any way that he can." Richardson testified that he then provided defendant with a pen and blank statement forms and left him alone in an interview room. Giving appropriate deference to the suppression court's credibility determinations (*see People v Baggett*, 57 AD3d 1093, 1094 [2008]), we agree with the court's finding that the People met their burden of showing that defendant's written statement was a voluntary act, as it was part of a pattern of willingness on his part to discuss his conduct with the police (*see People v Paulman*, 5 NY3d 122, 131 [2005]).* Thus, we decline to disturb the court's determination that defendant's statement was not a product of custodial interrogation.

---

* We note that, although Richardson's trial testimony revealed a different sequence of events, defendant did not object to such testimony or move to

Defendant's assertions that he is entitled to a new trial based on the People's failure to provide him with an incident report, a videotape and a notice of intent to offer his oral statements at trial are all unavailing. Inasmuch as the incident report was never offered into evidence and its contents were not discussed at trial, the substance of the report is outside the record and cannot be considered on appeal (*see People v Brown*, 233 AD2d 764, 766 [1996], *lv denied* 89 NY2d 1009 [1997]).

Defendant also claims that the People failed to disclose a video obtained from a gas station where he indicates in his written statement he stopped to put air in his tires on the night of the incident. However, after viewing the tape during a trial recess, defendant conceded that it did not appear to encompass the relevant time period. Inasmuch as the video does not contain exculpatory, material information, it was not *Brady* material (*see People v Santorelli*, 95 NY2d 412, 421 [2000]).

Finally, inasmuch as defendant made a timely motion to suppress his oral statements to Richardson, which County Court thereafter denied, the People's failure to comply with the notice requirements of CPL 710.30 (1) is academic (*see* CPL 710.30 [3]; *People v Amparo*, 73 NY2d 728, 729 [1988]; *People v Cobian*, 185 AD2d 452, 452-453 [1992], *lv denied* 81 NY2d 838 [1993]).

Defendant's remaining contentions, including that his sentence is harsh and excessive, have been examined and are found to be without merit.

Peters, J.P., Malone Jr., Garry and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

reopen the evidence on the suppression motion, and our review of the suppression court's decision is limited to evidence presented at the pretrial hearing (*see People v Dodt*, 61 NY2d 408, 417 [1984]).