■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SEUGN SAMBA, Also Known as SERIGUE SAMBA, Appellant. [948 NYS2d 58]—

At trial, Rashad Blake, the victim of the assault, testified as follows: Shortly after 11:00 p.m. on May 30, 2009, defendant approached Blake and his friend, Keith Edwards, on West 111th Street in Manhattan. Blake and Edwards had known defendant for several years. During a verbal exchange concerning Blake's brother, defendant removed a gun from his vest. Defendant stepped back and pointed his gun at Blake's waist. When Blake stepped forward, defendant hit Blake in the head with "the butt of the gun." As defendant hit him, Blake heard the gun "[go] off [with] a loud pop" sound. Blake fell to the ground, not knowing if he had been shot or hit with the gun. Blake lost consciousness, and when he came to, his head was bleeding and he was in pain. Edwards also testified and corroborated Blake's testimony. Edwards explained that the sound he heard when Blake was hit "was a gunshot like."*

A bystander called the police. A police officer who responded testified that Blake told him that he had been "hit over the head with a gun" and that "the gun had gone off." Although the area was searched, no gun or ballistics evidence was recovered.

Blake was brought to the hospital by ambulance. The physician who treated him testified that Blake told him he had lost consciousness for a short time after he was hit with the handgun. The physician further testified that he diagnosed Blake with a scalp laceration and head injury, and closed the wound with three staples. A detective who visited Blake in the hospital that evening testified that Blake told him that defendant had hit Blake over the head with a gun, causing the gun to discharge.

Following a jury trial, defendant was convicted of second-degree assault, and second-degree and third-degree criminal possession of a weapon. The People asked for the maximum

---

* The use of "like" by the witness following "gunshot" is not a grammatical error to be acknowledged by sic. Rather, it is the popular jargon of the grammatically superfluous repetition of "like" as a mental punctuation or method of adding cadence to speech. In no way does it indicate that the witness was making an analogy to the sound of a gunshot.

sentence of 15 years. Defendant was adjudicated a second violent felony offender and sentenced to an aggregate term of 10 years.

On appeal, defendant argues that the People failed to prove his guilt with legally sufficient evidence. With regard to the assault conviction, defendant claims that the People failed to present evidence that Blake suffered "physical injury." With regard to the weapon possession convictions, defendant argues that the People did not present sufficient evidence that defendant possessed an "operable weapon" that "was loaded with 'live' ammunition." Defendant claims that as a result, the sentences imposed were excessive.

For the reasons set forth below, we find that all of the convictions were based on legally sufficient evidence. This Court's review of the legal sufficiency of trial evidence requires us to determine whether "any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial, viewed in the light most favorable to the People" (*People v Williams*, 84 NY2d 925, 926 [1994]). Furthermore, it is "well settled that matters of credibility are reserved for the triers of fact, who have had an opportunity to observe the demeanor of the witnesses and are therefore in the best position to weigh their testimony" (*People v Jones*, 165 AD2d 103, 108 [1991], *lv denied* 77 NY2d 962 [1991]).

Initially, we note that defendant's argument that the victim did not suffer physical injury is unpreserved (*see People v Gray*, 86 NY2d 10, 19 [1995]), and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits. To establish second-degree assault the People must prove beyond a reasonable doubt that defendant intentionally caused the victim to suffer physical injury by means of a dangerous instrument (*see* Penal Law § 120.05 [2]). " 'Physical injury' . . . means 'impairment of physical condition or substantial pain' " (*People v Chiddick*, 8 NY3d 445, 447 [2007], quoting Penal Law § 10.00 [9]). Generally, issues of physical condition and substantial pain are questions for the trier of fact (*People v Guidice*, 83 NY2d 630, 636 [1994]). Factors considered in resolving such issues include the subjective seriousness of a victim's wound and the medical treatment required (*see id.*). Pain need not be excruciating or incapacitating to support physical injury (*see Chiddick*, 8 NY3d at 447). Evidence that a victim's injury required medical attention, such as stitches, and caused him substantial pain, is generally sufficient to establish physical injury (*see e.g. People v Stone*, 45 AD3d 406 [2007], *lv denied* 10 NY3d 817 [2008]).

In this case, Blake testified that when defendant struck him on the head with the revolver, he temporarily lost consciousness and awoke bleeding and in pain. The physician and hospital records establish that his head was cut and that staples were used to close the wound. Blake further testified that when he woke the next morning, his jaw was swollen, his face was numb, and he had difficulty eating. He continued to have pain for the next two weeks and was unable to work for one week. In court, he pointed to a scar on the side of his head left by defendant's gun. The direct testimony of Blake, as well as that of the physician who treated him, provided the jury with sufficient evidence to conclude that Blake suffered "physical injury" within the meaning of the Penal Law.

As to the criminal possession of a weapon charges, the People presented sufficient evidence that defendant possessed an operable firearm. To establish defendant's guilt of criminal possession of a weapon in the second degree, the People must prove beyond a reasonable doubt that defendant possessed a loaded firearm outside his home or business, and that he intended to use it unlawfully against another (Penal Law § 265.03 [1]). To establish criminal possession of a weapon in the third degree, the People must prove that defendant possessed a firearm and had previously convicted of a crime (Penal Law § 265.02 [1]). Proof of operability is an essential element of the crime of criminal possession of a weapon (*People v Hechavarria*, 158 AD2d 423, 424-425 [1990]). An operable firearm is one that is capable of discharging ammunition (*see People v Velez*, 278 AD2d 53 [2000], *lv denied* 96 NY2d 808 [2001]).

Here, defendant does not dispute that he possessed a weapon outside of his home, that he intended to use it unlawfully and that he had been previously convicted of a crime. Instead, defendant argues that the People failed to prove that he was holding an "operable" gun, or a gun that was loaded with "live" ammunition.

Where, as here, there is no gun or ballistics evidence recovered, those elements may be proved circumstantially through eyewitness testimony and surrounding circumstances (*Hechavarria*, 158 AD2d at 425, citing *People v Borrero*, 26 NY2d 430, 436 [1970]; *see e.g. People v Bianca*, 91 AD3d 1127 [2012]; *People v Jackson*, 288 AD2d 52 [2001], *lv denied* 97 NY2d 729 [2002]). Thus, a witness's testimony that he or she heard gunshots provides circumstantial evidence that a gun was loaded and operable (*see e.g. People v Maeweather*, 159 AD2d 1008, 1008 [1990], *lv denied* 76 NY2d 738 [1990] [witnesses "heard a

noise like the firing of a gun"]; *Hechavarria*, 158 AD2d at 423-425 [the defendant was seen holding a gun and there was the sound of gunfire]; *People v Ciola*, 136 AD2d 557 [1988], *lv denied* 71 NY2d 893 [1988] [witnesses saw and heard the defendant fire the gun]). Furthermore, no expert testimony is required when the matter to be determined lies "within the ken" of an ordinary juror (*People v Madera*, 24 AD3d 278, 284 [2005], *lv denied* 6 NY3d 815 [2006]; *see Kulak v Nationwide Mut. Ins. Co.*, 40 NY2d 140, 147 [1976]).

Here, there is no dispute that defendant was holding a gun and that he struck Blake in the head with it. Both Blake and Edwards testified that when defendant struck Blake, the gun "went off," and that they heard a "loud pop" or gunshot sound as it discharged. The sound of a gunshot may be said to be within the realm of common knowledge. Thus, the jury needed no expert assistance to determine that the witnesses heard the gun fire. Presented with Blake's and Edwards' testimony, the jury was entitled to conclude that defendant possessed a loaded, operable handgun. Accordingly, there is no basis upon which to disturb the jury's verdict.

We find that defendant's sentences were not excessive. Concur—Mazzarelli, J.P., Friedman, Catterson, Renwick and Freedman, JJ.