OPINION OF THE COURT
Steven L. Barrett, J.
After conducting a Wade hearing, and prior to the commencement of trial, the People sought a ruling on the admissibility of evidence of photographic identifications made by two witnesses. In an oral decision dated May 23, 2013, the court granted the People’s application and permitted the People to introduce as direct evidence both the testimony of the identifying witnesses and the photos themselves. This opinion formalizes the court’s oral decision and further elucidates the basis for that determination.
At the Wade hearing, the People presented the testimony of Detective Davie Rodriguez, who was assigned to investigate the July 26, 2008 fatal shooting of Richard Tongue. On August 20, 2008, Rodriguez interviewed Cornelius Barnes. Barnes had previously met with Rodriguez and had told Rodriguez that he had observed an individual he knew as “XL” shoot Tongue. During the August 20th meeting, Barnes accessed his MySpace account, downloaded and printed out a photograph of defendant, and identified defendant as the person he saw shoot Tongue. The photograph downloaded from MySpace depicts defendant wearing a T-shirt and jeans, with a backpack strapped over both of his shoulders, and on the bottom of the photograph are the letters “XL” in purple and in much smaller type across the bottom there appear the words, “www.myspace.com stephen_the_african_king. ’ ’
On August 22, 2008, Rodriguez interviewed Glorious Landrum at Rikers Island. Landrum stated that on the night of the shooting, he had heard shots fired and had seen the person he believed was the shooter run past him with a gun in his hand. Landrum told Rodriguez that he recognized the person who had run past him from Truman High School, where he and that person were both students. Rodriguez then showed Landrum a 2007 Truman High School yearbook which consisted of 28 pages of 335 headshot photographs of the members of the senior class. Of the 335 photographs, 153 were of males, and 92 of the 153 males were dark-skinned African-Americans. All of the young men depicted in the yearbook were of the same age, and were wearing black tuxedos, whites shirts with black studs, and red *807 bow ties.[1] On the page with defendant’s photograph, there were 11 other photographs, 4 of which were black males. Rodriguez began to slowly turn the pages, and when he got to page 49, Landrum identified defendant as the person he saw run past him with a gun on the fateful evening of July 26th.
On August 25, 2008, Rodriguez again interviewed Cornelius Barnes, and showed him a photo array consisting of defendant’s headshot from the Truman High School yearbook and five other Truman yearbook headshots of young, dark-skinned, black men identically dressed in black tuxedos, white shirts and red bow ties. Barnes identified the photograph of defendant as the person who shot Tongue.
On September 5, 2008, defendant was arrested and taken to the 47th Precinct for arrest processing. During the course of processing, prior to having been administered the Miranda warnings, Detective Chaffee asked defendant if he goes by any nicknames, to which defendant answered, “XL.” Subsequently, after Rodriguez administered the Miranda warnings, defendant asked for a lawyer, and the detectives ceased questioning defendant.
On September 6, 2008, sometime prior to defendant’s arraignment, defendant was placed in a lineup which was viewed by Barnes. Barnes again identified defendant as the person who shot Tongue. Defendant did not have counsel at the lineup.
After Rodriguez’s testimony, the court heard argument and ruled that the statement regarding defendant’s nickname was admissible under the pedigree exception to Miranda. With respect to the identification evidence, the court found that evidence regarding the identification of defendant’s My Space photograph by Barnes was admissible as it was Barnes, and not Rodriguez, who had initiated this identification procedure. The court also found that none of the other identification procedures — the showing of the yearbook to Landrum, the photo array to Barnes and the lineup — were conducted in any way that could be considered suggestive. The court further found that defendant’s right to counsel at the lineup had not been violated because defendant had not yet been arraigned nor had counsel yet entered the case on defendant’s behalf.
With respect to the admissibility of evidence regarding the photographic identifications by Landrum and Barnes, the court *808 initially reserved decision on this issue. On May 23, 2013, having reviewed the history and evolution of the law regarding the admissibility of evidence of photographic identifications, the court ruled the evidence of Barnes’ and Landrum’s photographic identifications was admissible as direct evidence at trial. At trial, both Barnes and Landrum testified to their respective photographic identifications of defendant, and both the Truman High School yearbook photograph of defendant selected by Landrum and the photo array shown to Barnes were received in evidence.[2]
Because the issue of the admissibility of evidence of photographic identifications involves an evolving area of law, I now take this opportunity to more fully and formally explain the basis for my determination that the photographic identifications at issue were admissible as direct evidence.
In 1966, the Court of Appeals ruled that evidence of photographic identifications is inadmissible based upon two concerns: (1) that it is “readily possible to distort pictures,” and (2) where the photos that are used in the array are arrest photos, that the jury will infer that defendant has been in trouble with the law before. (See People v Caserta, 19 NY2d 18, 21 [1966].) However, this prohibition has not been absolute. Even after Casería, photographic identification evidence has been admitted when the defendant has opened the door to its introduction; when the prosecution has impeached its own, hostile witness; or when defendant has chosen to elicit testimony about a pretrial identification from photographs. (See Hibel, New York Identification Law: The Wade Hearing, The Trial § 12.02 [2007 ed].)
In addition to these limited exceptions to the Casería rule barring the admission of evidence of photographic identifications, in a case analogous to the case at bar, the Court of Appeals has held that evidence of a pretrial identification made by the complaining witness from a videotape taken by the police, canvassing a particular neighborhood and focusing on numerous passersby, is admissible as evidence-in-chief. (See People v Edmonson, 75 NY2d 672 [1990].) The Court based its decision upon the fact that the videotape procedure employed by the po *809 lice officers and the subsequent viewing by the victim were neither suggestive nor prejudicial. (Id. at 674.) With respect to the lack of prejudice, the Court noted that, unlike traditional photo arrays, the videotaping did not involve showing a witness a “rogues gallery of mug shots” which would likely create an inference that the defendant had prior arrests, nor was the videotape of poor or uneven quality and subject to distortion. (Id. at 678 [internal quotation marks omitted].)
Recently, in People v Perkins (15 NY3d 200 [2010]), the Court of Appeals continued what appears to be a relaxation of Caserta’s bar to the admission of photographic identification evidence as direct evidence. In Perkins, the Court of Appeals held that, where defendant’s obstreperous behavior thwarted a lineup, it is permissible to admit evidence of a pretrial photographic identification of the defendant. Although the Court’s ruling was limited to the situation when a defendant’s misconduct obstructs a corporeal identification, the ruling strongly suggests that there is no per se bar to admitting evidence of photographic identifications and that trial courts have discretion to admit such evidence when the situation warrants it. (Id. at 206.)
The Perkins decision was foretold in an excellent article which surveyed the law with respect to photographic identification evidence, written by Justice Barry Kamins, prior to the Court of Appeals’ decision in Perkins. (See Kamins, Criminal Law and Procedure, Photo I.D. Evidence: Is it Time for a Change, NYLJ, Apr. 5, 2010 at 3, col 1.) Of particular relevance to the instant case, in his article, Justice Kamins cites the recommendation of the New York State Bar Association’s Task Force on Wrongful Convictions that the Criminal Procedure Law should be amended to explicitly permit evidence of photographic identifications at trial. Notably, Justice Kamins cites the testimony of Barry Scheck of the Innocence Project before the Task Force in support of the admissibility of photographic identifications at trial as long as they are conducted with the best practices regarding the procedures employed by the police.
Justice Kamins also notes that New York is the only state that does not permit evidence that, prior to trial, a witness identified the defendant from a photograph, and, throughout the course of the article, Kamins implies that the rationale for excluding such evidence has become obsolete. (See also People v Woolcock, 7 Misc 3d 203 [Sup Ct, Kings County 2005].) Certainly, this is true in the instant case, where, much like People v Edmonson, neither of the concerns raised in Caserta *810 concerning photographic identifications are present. The photographs at issue are from a high school yearbook, were clearly made using modern, sophisticated equipment, and are of superior quality. They depict the students looking their best— they are all dressed in formal attire and many are smiling. In short, as opposed to depicting a gallery of rogues, these photos are more aptly described as depicting a gallery of choirboys; thus, it is hard to see how defendant is prejudiced by their admission.[3] In addition, the trial of defendant has taken place approximately five years after the photographic identifications. During jury selection, one juror raised the issue of how she could properly evaluate a witness’s identification testimony given the passage of so much time. Thus, to limit the testimony of Landrum to merely his in-court identification of defendant would be to restrict unduly the prosecution’s ability to address the issue of Landrum’s ability to identify defendant given that almost five years have elapsed since the murder of Tongue.
Finally, it is worth noting that there is nothing in the language of CPL 60.30 which expressly excludes evidence of a pretrial photographic identification.[4] Although this provision has been interpreted to apply only to corporeal identifications, it can be said that both Edmonson and Perkins have broadened its application to permit the admission of evidence of pretrial photographic identifications. (See People v Perkins, 15 NY3d at 205 [“there is no indication that the Legislature (in adopting CPL 60.30) intended to rule out photographic identification evidence in the event a defendant thwarts a lineup”]; People v Edmonson, 75 NY2d at 674 [identification of defendant from videotape not inadmissible under CPL 60.30]; see also People v Huertas, 75 NY2d 487, 494 [1990] [in enacting CPL 60.25 and 60.30, the legislature intended only to eliminate a technical bar to the receipt of probative evidence of identification, not to preclude all use of similar testimony, including the nonhearsay use of description testimony].)
Moreover, defendant’s claim that the admission of the photographic identifications by Landrum and Barnes improperly bolstered their in-court identifications of defendant is unavailing *811 because such bolstering claims only apply to the testimony of a third party about a previous identification. (See People v Trowbridge, 305 NY 471 [1953] .) Here, the court did not permit any third parties to testify regarding any of the witnesses’ pretrial identifications.
Based on all of the foregoing reasons, the court granted the People’s motion to introduce evidence of the photographic identifications by Landrum and Barnes.

. Two of the 153 men were wearing black bow ties. Defendant and the 150 others were wearing red bow ties.

. It should be noted that, at trial, defense counsel objected to the introduction of the photo array shown to Barnes, but failed to object to the evidence of the yearbook photographic identification by Landrum. In addition, without objection, Barnes testified to identifying defendant in the MySpace photograph and the lineup, and the MySpace photograph and lineup photograph were received in evidence.

. It is, therefore, not at all surprising that, at trial, defense counsel did not object to the admission of the yearbook photograph and the identification of that photograph by Landrum.

. CPL 60.30 when applied to evidence of photographic identifications would provide an exception to the rule which ordinarily excludes statements that are consistent with a witnesses’ testimony.