OPINION OF THE COURT
Memorandum.
Ordered that the judgment of conviction is affirmed.
*22 On April 9, 2012, the People charged defendant, in an information, with forcible touching (Penal Law § 130.52), endangering the welfare of a child (Penal Law § 260.10 [1]), sexual abuse in the third degree (Penal Law § 130.55), and harassment in the second degree (Penal Law § 240.26 [1]), alleging that, on March 24, 2012, at about 12:20 p.m., in the restroom of a branch of the Brooklyn Public Library, defendant had approached the complainant, a 14-year-old male, and groped his buttocks and penis. The complainant returned immediately to his home, located a few blocks from the library, and reported the incident to his mother, who called 911. She spoke briefly with the 911 operator before handing the telephone to the complainant, who recounted the incident and provided a description of his assailant. Following a police investigation, which included interviews with the complainant at his home and with library personnel, two officers located defendant, who matched the description given by the complainant. Defendant made several statements to the police which, while nominally exculpatory, revealed knowledge of numerous details of the incident as recounted by the complainant, such as the complainant’s name, and included the admission, “I was stupid.” Defendant was arrested, and, following a waiver of the Miranda warnings, authored a written statement wherein he again provided numerous details of the incident that only someone involved in the incident could have known, but insisted that his encounter with the complainant had involved no inappropriate conduct. The complainant identified defendant at a corporeal lineup.
The People served and filed a notice of their intent to offer certain of defendant’s statements (see CPL 710.30 [1] [a]), which notice did not include the statement, “I was stupid.” At a combined Payton, Mapp, Dunaway, and Wade hearing, the prosecutor acknowledged that the statement, “I was stupid,” reported by an investigating police officer on her direct testimony, was not included in the statement notice, and initially represented that the’ People would not offer that statement at the trial. The defense proceeded to cross-examine the witness with respect to the circumstances of defendant’s having made this and other statements prior to and following the arrest, ostensibly to litigate their voluntariness and issues relating to the propriety of the arrest and the postarrest investigation. At the hearing’s conclusion, the prosecutor argued that, in light of that litigation, the People should be, *23 allowed to use the statement. The hearing court (Jacqueline D. Williams, J.) agreed and.denied suppression.
At a jury trial, the Criminal Court granted the prosecutor’s request to admit a recording of the 911 call (with the complainant’s mother’s statements redacted) under the excited utterance exception to the hearsay rule. Further, during his direct testimony, the complainant twice referred to his having viewed a photo array during the police investigation. Following summations, wherein there occurred numerous objected-to comments by both counsel, the jury convicted defendant of all of the charges.
On appeal, defendant argues that the admission of the statement “I was stupid” and the 911 recording, the improper references by the complainant to the photo array, and prosecutorial misconduct on summation deprived him of a fair trial.
The CPL 710.30 notice requirements serve to “facilitate a defendant’s opportunity to challenge before trial the voluntariness of statements made by [a defendant]” (People v Lopez, 84 NY2d 425, 428 [1994]), and, in furtherance of that end, the People are required to serve notice of their intent to offer such evidence within 15 days of arraignment and before trial (see CPL 710.30 [2]). The 15-day rule may be waived “[f]or good cause shown” (id.), and the notice requirement is excused if the defendant has, in fact, moved for suppression (see CPL 710.30 [3]; Lopez, 84 NY2d at 428; e.g. People v Bianca, 91 AD3d 1127, 1130 [2012]). While the waiver rule is not triggered by a motion limited to preclude the use of statements on the basis of an untimely notice (see People v Amparo, 73 NY2d 728, 729 [1988]), where the motion is also to suppress the statements and a hearing on the matter has been held, the defendant has been “afforded . . . the same opportunity for a court to pass upon the admissibility of the statement as he would have had if timely notice had been given,” and in such case the waiver rule applies (id.; see e.g. People v Merrill, 87 NY2d 948 [1996], revg on dissenting op of Denman, P.J., and Balio, J., 212 AD2d 987, 988 [1995]). The waiver rule has been invoked where an unnoticed statement was elicited by the prosecutor and defense counsel at a Huntley hearing, a procedure deemed “sufficient to put the defendant on notice of the People’s intent to use the statement. . . [and to provide] ample opportunity to challenge the statement at that time” (People v Schnugg, 257 AD2d 669, 670 [1999]). Here, defendant, granted a Huntley hearing on the noticed statements and alerted to the unnoticed statement, *24 was afforded a full opportunity to litigate the statement’s admissibility, and, in fact, actively litigated its admissibility on multiple grounds at the hearing and in a posthearing memorandum of law, notwithstanding the prosecutor’s initial concession, in effect, that the statement, not properly noticed, could not be used. By proceeding in this fashion, defendant “ ‘waived preclusion on the ground of lack of notice because [he] was given a full opportunity to be heard on the voluntariness of that statement at the suppression hearing’ ” (People v Davis, 118 AD3d 1264, 1266 [2014], quoting People v Dean, 299 AD2d 892, 893 [2002]; e.g. People v Dillon, 30 AD3d 1135, 1136 [2006] [the defendant’s litigation of the admissibility of an unnoticed statement first elicited at a hearing rendered “any deficiency in the notice provided by the People . . . irrevelant”]; see also People v Kirkland, 89 NY2d 903, 905 [1996]; People v Garcia, 290 AD2d 299, 300 [2002]; People v Tuthill, 24 Misc 3d 46, 50 [App Term, 2d Dept, 9th & 10th Jud Dists 2009]). Defendant does not argue that the hearing evidence was insufficient to support the trial court’s denial of suppression on grounds other than a notice violation.
We cannot agree with defendant’s contention that the prosecutor’s initial determination to refrain from offering the statement was binding on the People (see CPL 710.60 [2] [b]) notwithstanding defendant’s subsequent litigation of the statement’s admissibility. By its terms, CPL 710.60 (2) (b) applies to summary, prehearing dispositions of motions to suppress evidence (see People v White, 73 NY2d 468, 477-478 [1989]). The prosecutor’s initial representation that the People would not seek to use the statement was not made in the pre-hearing context, thereby depriving the defense of an opportunity to challenge the statement’s admissibility. Defendant also contends that he cannot be held to have waived the notice-violation claim solely because he questioned the witness about the statement, inasmuch as the inquiry was to investigate, among other things, the admissibility of all of defendant’s utterances to the arresting officers and the propriety of the official action taken by them. However, the issue here is not the use of precluded statements in the determination of related suppression issues (see e.g. People v Apelbaum, 33 Misc 3d 4, 8-9 [App Term, 2d Dept, 9th & 10th Jud Dists 2011]; People v Aldrich-O’Shea, 6 Misc 3d 35, 37 [App Term, 2d Dept, 9th & 10th Jud Dists 2004]), but whether, by litigating the admissibility of the statement the People had indicated they would withhold, defendant waived a preclusion argument.
*25 Twice during his direct testimony, the complainant referred to having viewed a photo array. At the conclusion of the complainant’s testimony, the defense, acknowledging that the witness had not mentioned that defendant’s photo was included in the array, moved for a mistrial on the ground that there was incurable prejudice in the fact that, since there had ensued a lineup wherein defendant had participated, the jury could only conclude that defendant’s picture was in the photo array and that the complainant had made a positive identification. On appeal, defendant bases his claim of error on the risk that the jury would infer from the testimony that he “had a criminal record” because “the obvious source was an arrest photo.” A witness “may not testify to an extrajudicial identification of a photograph of the defendant” (People v Griffin, 29 NY2d 91, 93 [1971]; see e.g. People v Hamilton, 33 AD3d 937, 938 [2006]), and, as defendant contends, a basis for the exclusion of such proof is that “a jury might infer that the police possessed a defendant’s photograph because of previous run-ins with the law” (People v Perkins, 15 NY3d 200, 205 [2010]). However, the witness did not testify to an extrajudicial identification, only that he had participated in an extrajudicial photo array identification procedure, without reference to whether defendant’s photo was in the array or whether he had positively identified defendant. While prejudice from an extrajudicial identification may be substantial where, for example, identification is “essential” to connecting the defendant to the crime (e.g. People v Rosario, 127 AD2d 209, 215 [1987]; People v Shannonhouse, 52 AD2d 725, 725 [1976]), here, there was no issue as to identification. Defendant admitted to an encounter with the complainant at the time and place alleged, and the complainant, who provided a detailed and accurate description of the perpetrator, later identified defendant in a lineup, the propriety of which is not challenged. The primary contested issue at trial was whether a criminal offense had occurred during the encounter. Defendant’s claim of prejudice, that the jury could conclude that because defendant’s photo appeared in the photo array, defendant had a criminal record, which, in turn, rendered it more likely that a criminal incident had occurred between the complainant and defendant, depends on an increasingly attenuated series of inferences — first, that defendant’s photograph was in the photo array, second, that the source of the photo was police arrest records, and third, that the witness identified defendant from *26 his photo. Further, the prejudice, if any, arising from the complainant’s improper references to having viewed “some pictures” was diminished by the complainant’s testimony regarding his identification of defendant in a police lineup (see People v Misla, 2 AD3d 651, 652 [2003]; cf. People v Wright, 21 NY2d 1011, 1012 [1968] [police testimony that the victim had identified the defendant from “photographs from police files” was improper]). In any event, in the unlikely event that the jury drew the tenuous sequence of inferences urged by defendant, there is no significant probability that the jury would have acquitted defendant of the charges had they not heard the complainant state that he had been shown photographs by the investigating police officer (see e.g. People v Flowers, 95 AD3d 1233, 1234 [2012] [and cases cited therein]).
Defendant further argues that the People failed to establish the requisite foundation under the excited utterance exception to the hearsay rule for the admission of the recording of the 911 call by the complainant’s mother in which the complainant participated. Defendant cites, in particular, the time between the incident and the call which, he insists, was as long as 40-45 minutes; the absence of physical trauma to the complainant; that the complainant walked home from the library and went to his room before speaking with his mother; and that the statements were responses to questioning as opposed to unsolicited verbalizations. (Prior to trial, on defendant’s motion, the portions of the recording that preserved the mother’s statements were redacted.) A 911 recording is, in theory, inadmissible on grounds both of hearsay, if it is “admitted for the truth of the matter asserted” (People v Buie, 86 NY2d 501, 505 [1995]), and as bolstering (see People v Smith, 22 NY3d 462, 465 [2013]; People v Caba, 66 AD3d 1121, 1123 [2009]), unless it falls under an exception to the hearsay rule as, for example, an excited utterance (e.g. People v Clarke, 101 AD3d 897, 898 [2012]; People v Mack, 89 AD3d 864, 866 [2011]). The excited utterance exception applies where it is shown that a statement was made “under the stress of excitement caused by an external event sufficient to still [the declarant’s] reflective faculties, thereby preventing opportunity for deliberation which might lead [him] to be untruthful” (People v Edwards, 47 NY2d 493, 497 [1979]; see also People v Johnson, 1 NY3d 302, 306 [2003]; People v Brown, 70 NY2d 513, 522 [1987]; People v Vanderhorst, 117 AD3d 1197, 1200 [2014]). Trial courts are accorded “wide discretion” in determining whether the standard of admissibility of *27 such statements has been met, and their rulings “should not be disturbed on appeal” absent an abuse of that discretion (People v Carroll, 95 NY2d 375, 385 [2000]; People v Soriano, 121 AD3d 1419, 1422 [2014]; People v Whitlatch, 294 AD2d 909, 909 [2002]; People v Moore, 51 Misc 3d 6, 9 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]).
Even if defendant’s estimate that the call occurred 40-45 minutes after the incident is adopted, there was no error in admitting the recording. Addressing this factor, the Johnson Court stated:
“As we have several times noted, there can be no definite or fixed period of time within which the declaration must have been made, and each case must depend upon its own circumstances. ‘The test is whether the utterance was made before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance’ (People v Brown, 70 NY2d 513, 518 [1987]) . . . Ultimately, ‘the time for reflection is not measured in minutes or seconds, but rather is measured by facts’ (People v Vasquez, 88 NY2d 561, 579 [1996]) . . .
“[T]he test remains what it has always been: whether the declarant is capable of studied reflection and therefore incapable of fabrication” (1 NY3d at 306-307; see also People v Cotto, 92 NY2d 68, 79 [1998]; People v Brooks, 71 NY2d 877, 878 [1988]; People v Smith, 170 AD2d 548, 549 [1991]; People v Valentine, 40 Misc 3d 28, 31 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]).
The 911 recording, as redacted, begins with the complainant answering general questions as to the incident in a low, halting voice. As the 911 operator’s queries become more specific as to the facts of the incident and as to the perpetrator’s description, the complainant’s stress, obvious at the outset, intensifies; his voice becomes more strained and sniffles punctuate his speech until he breaks down, crying and choking, making an effort to speak and to answer questions responsively. The stress is intense and genuine. It is noted that, asked by the 911 operator how long before the 911 call the incident had occurred, the complainant replied that it “just happened,” clearly meaning a short time before the call. The tenor of the recording is as construed in People v Livrieri (125 *28 AD3d 579, 579-580 [2015]), wherein the Court concluded that a 911 recording was properly admitted pursuant to the excited utterance exception to the hearsay rule because “[t]he tape of the call reveals that the victim was in an agitated state and was still operating under the influence of defendant’s attack, notwithstanding intervening events” (see also People v Sykes, 26 AD3d 203 [2006]; People v Prashad, 297 AD2d 352 [2002]; People v Johnson, 272 AD2d 555 [2000]). There is no reason not to credit the complainant’s testimony that he left the library immediately after the attack, too upset to speak to anyone; that he went directly home and to his own room in so uncharacteristically uncommunicative a state as to alarm his mother; and that the complainant immediately began to cry when his mother attempted to elicit from him an account of the incident. Further, the fact that his statements were responsive to questions by the 911 operator “does not disqualify them as excited utterances but rather is a fact to be considered by the trial court” (People v Cotto, 92 NY2d at 79; see e.g. People v Brown, 70 NY2d at 519; People v Gantt, 48 AD3d 59, 64 [2007]; People v Moore, 51 Misc 3d at 9). In sum, it may be inferred that, at the time of the call, the complainant’s “reflective capacity was stilled” (People v Nieves, 67 NY2d 125, 135 [1986]) and that his declarations were sufficiently spontaneous to “guarantee! ] [their] trustworthiness and reliability” (People v Cantave, 21 NY3d 374, 381 [2013]). Thus, it cannot be said that the trial court abused its wide discretion in determining that the 911 recording satisfied the criteria for admission under the excited utterance exception to the hearsay rule.
Defendant also alleges that the prosecutor, on summation, denigrated the defense and vouched for the complainant’s credibility. While certain of the prosecutor’s remarks may be characterized as inappropriate, we find that, in the context in which they were uttered, there was no undue prejudice. Courts have long recognized “the broad bounds of rhetorical comment permissible in closing argument” (People v Galloway, 54 NY2d 396, 399 [1981]) and that a summation attack by the defense, for example, on the prosecution witnesses’ credibility may justify a People’s response in kind (see People v Halm, 81 NY2d 819, 821 [1993]). This is so where, as here, the trial “turns . . . on issues of credibility” and the outcome “depends for the testing of truth and, ultimately, for a just determination on the clash of competing contentions advanced under well-established rules by zealous and independent opposing counsel” (Galloway, *29 54 NY2d at 398; see e.g. People v Albertorio, 31 Misc 3d 127[A], 2011 NY Slip Op 50443[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]). Where the defense attacks the credibility of the prosecution witnesses in summation, “a responsive argument by [the prosecutor] that his witnesses have testified truthfully is not vouching for their credibility” (People v Barber, 13 AD3d 898, 900 [2004] [internal quotation marks and citation omitted]; e.g. People v Whitehurst, 70 AD3d 1057, 1058 [2010]). In this vigorously defended case, defense counsel relied principally on an attack on the character and credibility of the 14-year-old complainant. Counsel began her summation by declaring her client innocent and that any evidence produced by the complainant tending to support a contrary conclusion was not merely mistaken, but a “lie.” Counsel offered a litany of the complainant’s purported “lies,” urging that the complainant’s demeanor, alleged to have varied according to whether he was being encouraged to lie (direct testimony) or when defending his ability to tell the truth (cross-examination), was indicative of a guilty self-consciousness as to his failure to testify truthfully. Defense counsel went so far as to impugn the complainant’s confidence in his own sexuality, insinuated that the complainant had lied about the incident to cover up the true nature of his own sexual conduct during the incident, and concluded by telling the jury that their importance to the legal system was preventing an innocent person “from being convicted and sent to jail for a crime he did not [commit],” at which point the court sustained the objection.
However desirable a trial strategy this may have appeared to counsel, the defense cannot complain if the prosecutor exercised the broad bounds of permissible comment on summation to refute the attack. Summation argument “ ‘must be examined in the context of that delivered by opposing counsel, and is proper if it is responsive to arguments and issues raised by the defense’ ” (People v Rhodes, 11 AD3d 487, 488 [2004], quoting People v Jones, 294 AD2d 517, 517 [2002]; see also People v Mitchell, 125 AD3d 790, 791 [2015]). In this context, a prosecutor is allowed appropriate leeway to rehabilitate a witness whose character and credibility have been impugned (e.g. People v Stith, 291 AD2d 576 [2002]; People v Pope, 253 AD2d 443 [1998]). Here, many of the complained-of remarks — such as those emphasizing the complainant’s youth, vulnerability, and the ordeal experienced by such a person to be required to speak publicly before strangers about an experience that had *30 embarrassed and traumatized him, and to be subject to an attack on his integrity in terms of truth telling, even on his sexuality — were entirely responsive to the defense, which cannot complain even if the remarks, considered out of context, might be objectionable.
We agree that a number of the prosecutor’s remarks which may be construed as critical of defense counsel’s motives and argument were improper (see generally People v Lombardi, 20 NY2d 266, 272 [1967]; People v Morgan, 111 AD3d 1254, 1255 [2013]; People v Spann, 82 AD3d 1013, 1015 [2011]; but see People v Galloway, 54 NY2d at 399 [prosecutor’s summation references to the defendaht’s argument as a “smokescreen” and “a red herring” under the circumstances did not exceed the permissible bounds of rhetorical comment]). Nevertheless, the court sustained defense counsel’s objections to certain of the remarks and repeatedly issued ameliorative instructions as to the significance of the summations of counsel, which instructions the jury is presumed to have followed (see People v Baker, 14 NY3d 266, 274 [2010]; People v Evanson, 71 AD3d 782, 783 [2010]). In light of the trial proof, which included defendant’s admissions as to all of the salient details as to the time, place and manner of his encounter with the complainant save for whether he had sexually accosted the complainant, and the indicia of the complainant’s credibility as to the facts of the offenses, it cannot be said that there was any significant probability that, but for the prosecutor’s summation, defendant would not have been convicted (see People v Crimmins, 36 NY2d 230, 241-242 [1975]; e.g. People v Deokoro, 137 AD3d 1297, 1297-1298 [2016]; People v Flanagan, 132 AD3d 693, 694 [2015]), particularly in light of the absence of other error urged by defendant on the appeal.
Accordingly, the judgment of conviction is affirmed.
Pesce, P.J., Solomon and Elliot, JJ., concur.